Alexina NECHIS and Doris Mady, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

OXFORD HEALTH PLANS, INC. and TRIAD HEALTHCARE, INC. Defendants–Appellees.

Docket No. 04–5100–CV.

United States Court of Appeals, Second Circuit.

Argued: May 5, 2005.

Decided: Aug. 24, 2005.

Catherine E. Anderson, Giskan & Soko-taroff, New York, New York, for Plaintiffs-Appellants.

Athena R. Tsakanikas, Oxford Health Plans LLC, Trumbull, Connecticut, Karen M. Wahle, Khuong Phan, O'Melveny &

Myers LLP, Washington, DC, for Oxford Health Plans, Inc., Defendant-Appellee.

Mark S. Baldwin, Brown Rudnick Berlack Israels LLP, Hartford, Connecticut, for Triad Healthcare, Inc., Defendant-Appellee.

Before: RAGGI, WESLEY, and CUDAHY,* Circuit Judges.

CUDAHY, Circuit Judge.

For plaintiffs Alexina Nechis and Doris Mady, members of health insurance plans offered by Oxford Health Plans, Inc., their assorted aches became a legal pain in the neck when their claims for chiropractor coverage were denied. Both Nechis and Mady had selected plans that covered chiropractic treatment from providers outside plan networks and both were treated by out-of-network chiropractors in late 2002. In December of 2002, Oxford had retained Triad Healthcare, Inc. to review its chiropractor claims and presumably to reduce its expenses. After receiving notice that most or all of their chiropractor claims had been denied, the plaintiffs sued Oxford and Triad on behalf of themselves and other similarly situated members, alleging multiple violations of the Employee Retirement Income Security Act (ERISA), including breach of their fiduciary duty and of their disclosure obligations, as well as failure to provide benefits as described in plan documents. The district court dismissed the plaintiffs' claims pursuant to Fed.R.Civ.P. 12(b)(6), finding that Nechis had failed to exhaust administrative remedies and that Mady's claims failed on their merits. The plaintiffs appeal, and we affirm.

## I.

Oxford Health Plans, Inc. underwrites, administers and operates employee welfare plans. As part of its product line, it offers HMO, PPO and PSO plans, each of which includes coverage for chiropractic care that is "medically necessary." Oxford defines "medically necessary" services as those services "required to identify or treat your illness or injury" which its medical director determines to be "1) Consistent with symptoms or diagnosis and treatment of your condition; 2) Appropriate with regard to standards of good medical practice; 3) Not solely for your convenience or that of any provider; and 4) The most appropriate supply or level of service which can safely be provided." In December of 2002, Oxford retained Triad Healthcare, Inc. to review its claims for chiropractic service. In the spring of 2003, Oxford distributed to its members a brochure titled "Healthy Mind, Healthy Body," informing subscribers that their in-network chiropractors would now be required to submit treatment plans for prior approval by Triad before chiropractic services would be covered, but that submission by out-of-network chiropractors for pre-approval was optional. The brochure also stated that post-service determinations would include a review of clinical notes, patient records and like documentation.

As required by ERISA, Oxford has an appeals process for adverse benefit determinations, consisting of three steps. Members must first file a grievance by telephone or mail; Oxford is supposed to acknowledge receipt of each such grievance within 15 days and to issue a determination within 30 days after receiving the information pertinent to the grievance. Members who wish to dispute the outcome of their grievance determination can re-file the grievance with Oxford's Grievance Re-

---

* The Honorable Richard D. Cudahy, Circuit Court Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation.

view Board and thereafter may institute a final appeal of a denied grievance to its Board of Directors' Committee.

Both Alexina Nechis and Doris Mady had been members of Oxford health plans. Nechis received coverage through her union benefits package that entitled her to unlimited in-network chiropractic coverage, including 15 visits to out-of-network chiropractors based on a showing of medical necessity. Mady was a member of Oxford's Freedom Plan, and her premiums were paid by her employer from approximately April of 1997 until March of 2002, when her job was eliminated through downsizing. After losing her job, Mady elected to continue her coverage through COBRA until April 30, 2003.[1] Switching to COBRA coverage did not alter the terms or conditions of her plan, which entitled her to unlimited in-network chiropractic care and coverage for a maximum of $500 per year for out-of-network care. Both plaintiffs submitted out-of-network chiropractic care claims after Triad began reviewing claims; Nechis had been treated in January 2003 and Mady had been treated in November 2002 by providers whom they had seen previously without insurance coverage difficulties. After receiving notice that their benefit claims for out-of-network services had been denied, both Nechis and Mady assert that they attempted to contact Oxford and/or Triad but were unable to do so. Nechis alleges that both she and her chiropractor tried to contact Oxford and Triad for months via telephone, fax and mail but received no satisfactory response. Mady states that she attempted to resolve her denied claims through Oxford's administrative channels by writing letters and placing phone calls appealing the denial of coverage. She was

actually notified that her files were being turned over for review and that her grievance had been submitted to the appeals division for first-level review. However, she received no word about the status of her appeal after waiting 60 days.

On September 22, 2003, the plaintiffs brought this action against Oxford and Triad on behalf of themselves and other similarly situated plan participants. The plaintiffs first alleged that Oxford breached its ERISA disclosure obligations by failing to inform participants within 60 days of instigating its practice of making chiropractic coverage decisions based on undisclosed cost-based criteria rather than medical necessity and by not informing participants that Triad received financial incentives to deny chiropractic claims and to limit coverage. Further, the plaintiffs alleged that Oxford delayed payment of covered claims to earn additional interest on premiums. The plaintiffs also contended that Oxford failed to provide benefits due under health insurance plans governed by ERISA and that this failure resulted in unjust enrichment for Oxford. Finally, the plaintiffs asserted that both Oxford and Triad had breached their fiduciary duties under ERISA. Both plaintiffs also stated that they had exhausted all administrative remedies.

On January 16, 2004, Oxford moved to dismiss the plaintiffs' claims under Fed. R.Civ.P. 12(b)(6), and Triad moved to dismiss them for lack of subject matter jurisdiction under Rule 12(b)(1) (and alternatively under 12(b)(6)). On August 4, 2004, the district court granted the defendants' motions and dismissed the plaintiffs' claims under Rule 12(b)(6), finding that

---

1. In its August 4, 2004 order granting summary judgment to defendants, the district court stated that Mady continued her COBRA coverage for 18 months, paying $276.44 each month. However, in her complaint dated September 22, 2003, Mady states that she was a member of the Oxford Freedom Plan only through April 30, 2003.

Nechis had failed to exhaust administrative remedies and that Mady's claims failed on their merits, in particular because legal restitution was not one of the "equitable remedies" available under § 502(a)(3) of ERISA and that no additional disclosure obligations could be imposed on the defendants. On appeal, the plaintiffs assert that they did seek appropriate equitable forms of relief available under § 502(a)(3), that Oxford is liable for disclosure violations, that Nechis exhausted her administrative remedies and that the district court abused its discretion by not granting leave to replead.

## II.

We have jurisdiction over this appeal under 28 U.S.C. § 1291. We review *de novo* the dismissal of this case under Fed. R.Civ.P. 12(b)(6). *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 216 (2d Cir.2004). Dismissal of a complaint under Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted is appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Harris v. City of New York,* 186 F.3d 243, 250 (2d Cir.1999) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims. *See Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998). At this stage, we assume that all well-pleaded factual allegations are true and draw all reasonable inferences in the plaintiff's favor. *See E.E.O.C. v. Staten Island Sav. Bank,* 207 F.3d 144, 148 (2d Cir.2000). In addition, we limit our consideration to facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference. *See Newman & Schwartz v.*

*Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir.1996).

## A. Standing to Sue Under § 502(a)(3) of ERISA

In granting the defendants' motions to dismiss under Fed.R.Civ.P. 12(b)(6), the district court held that Nechis had failed to exhaust administrative remedies under *Kennedy v. Empire Blue Cross & Blue Shield,* 989 F.2d 588 (2d Cir.1993), and so addressed only Mady's claims on the merits. We find, however, that considerations of standing prove fatal to Mady's allegations since she is not a plan "participant" under § 502(a)(3). As is discussed below, we are dubious that Nechis's claims may be dismissed for failure to exhaust administrative remedies and hence address them on the merits.

■ Oxford argues that, since Mady was not a member of its Freedom Plan at the time her complaint was filed, she could not benefit from injunctive relief and thus does not have standing to seek it. *See Selby v. Principal Mutual Life Ins. Co.,* 197 F.R.D. 48, 64 (S.D.N.Y.2000) (stating that plaintiffs who were no longer participants in defendants' insurance plan could not benefit from injunctive relief and thus did not have standing to seek it on behalf of class members). However valid this argument, it is only the tip of the iceberg; a larger standing problem lurks beneath the surface.

Section 502(a)(3) of ERISA provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain any other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." *See* 29 U.S.C. § 1132(a)(3) (2005). The Supreme Court

has construed § 502 narrowly to allow only the stated categories of parties to sue for relief directly under ERISA. *See Franchise Tax Board v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) ("ERISA carefully enumerates the parties entitled to seek relief under [§ 502(a)(3)]; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action ...."). The Court has also held that § 502(a)(3) strictly limits the "universe of plaintiffs who may bring certain civil actions." *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 247, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000) (emphasis omitted). The Second Circuit has, of course, followed on these well-marked paths. *See Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 14 (2d Cir.1991) (stating that § 1132(a) "names only three classes of persons who may commence an action," including a participant or beneficiary, the Secretary of Labor, and a fiduciary); *Pressroom Unions–Printers League Income Sec. Fund v. Continental Assurance Co.*, 700 F.2d 889, 892 (2d Cir.1983) (rejecting standing of plan itself on grounds that § 1132(a) limits standing to a participant, beneficiary or fiduciary).

■ In her complaint, filed September 22, 2003, Mady conceded that she was a member of the Oxford Freedom Plan only from approximately April 1, 1997 through April 30, 2003. ERISA defines a "participant" as "any employee or former employee of an employer...who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer ...." 29 U.S.C. § 1002(7) (2005). Thus, Mady was not a participant when her complaint was filed; her complaint establishes that

her employer ceased to pay premiums on her account in March of 2002 when she lost her job as a result of downsizing and that her COBRA coverage was terminated on April 30, 2003. Participants can lose standing to sue if, despite their having suffered an alleged ERISA violation, their participant status has been terminated before suit is filed. *Chemung*, 939 F.2d at 15 (citing *Katzoff v. Eastern Wire Products Co.*, 808 F.Supp. 96 (D.R.I.1992)). Because Mady extended her participation in the Oxford Freedom plan through COBRA only until April of 2003, and thus was not a participant when her complaint was filed on September 22, 2003, she lacks standing to sue under ERISA.

■ Nor has Mady alleged that she may again become eligible for such benefits. In order to establish that she may become eligible for benefits, Mady must have a colorable claim that (1) she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117–18, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). As a practical matter, Mady's termination in a downsizing meant that she could no longer expect to receive health insurance from Oxford as a fringe benefit of her employment, thus effectively ending her future eligibility for continuing coverage under the Oxford Freedom Plan. Since Mady was no longer a participant, she no longer had an interest in seeking the equitable relief available under § 502(a)(3).

With Mady's claims dismissed for lack of standing, we turn to those of Nechis. The parties disagree as to whether Nechis's claim is barred by a failure to exhaust administrative remedies. Some courts have held that exhaustion is not required for statutory claims,[2] while others apply

---

2. *See, e.g., Smith v. Sydnor*, 184 F.3d 356, 364–65 (4th Cir.1999); *Chailland v. Brown &*

the exhaustion doctrine to both plan-based and statutory claims.[3] *See De Pace v. Matsushita Elec. Corp. of Am.,* 257 F.Supp.2d 543, 557–58 (E.D.N.Y.2003) (discussing circuit split). This circuit has not addressed the specific question whether exhaustion is required for statutory claims, but has consistently recognized that the primary purposes of the exhaustion requirement are to "(1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo.*" *Davenport v. Harry N. Abrams, Inc.,* 249 F.3d 130, 132–34 (2d Cir.2001) (quoting *Kennedy,* 989 F.2d at 594). Nechis's claims are equitable in nature and do not involve interpretation of the terms of her plan. "District courts in the Second Circuit have routinely dispensed with the exhaustion prerequisite where plaintiffs allege a statutory ERISA violation." *De Pace,* 257 F.Supp.2d at 558 (E.D.N.Y.2003) (collecting cases). Nevertheless, because we find that the plaintiffs lack standing to sue and, as discussed below, that Nechis has not stated a legally cognizable claim, we need not here decide whether administrative exhaustion is a prerequisite to a statutory ERISA claim.

### B. *Nechis's Claims Fail on Their Merits*

Yet whatever the impact of Nechis's failure to exhaust administrative remedies, summary judgment is still appropriate since, as the district court properly determined, none of her claims are legally cognizable under ERISA.

### 1. *Breach of Fiduciary Duty and Request for Relief Under § 502(a)(3) of ERISA*

Nechis first contends that Oxford and Triad breached their fiduciary obligations imposed by § 404 of ERISA by denying, delaying or mishandling claims for chiropractic care and failing to disclose information to plan participants. Nechis seeks to remedy these practices by asserting a claim under § 502(a)(3) of ERISA, which authorizes civil actions "to enjoin any act or practice which violates ... the terms of the plan, or ... to obtain other appropriate equitable relief." 29 U.S.C. § 1132(a)(3). On appeal, she argues that the district court improperly disregarded her request for equitable relief and wrongly concluded that restitution was not an available remedy. Nechis renews her demand for injunctive relief, corrective disclosures and reformation, and requests certain forms of "equitable" restitution.

 As the district court concluded, Nechis's allegations with respect to disclosure violations and concerning reformation of claims resolution and appeals procedures are unavailing. Oxford has no duty to disclose to plan participants information additional to that required by ERISA; Ox-

---

*Root, Inc.,* 45 F.3d 947 (5th Cir.1995); *Richards v. General Motors Corp.,* 991 F.2d 1227 (6th Cir.1993); *Held v. Manufacturers Hanover Leasing Corp.,* 912 F.2d 1197 (10th Cir. 1990); *Zipf v. American Telephone & Telegraph Co.,* 799 F.2d 889, 891–92 (3d Cir. 1986); *Amaro v. Continental Can Co.,* 724 F.2d 747, 749–50 (9th Cir.1984). These cases also note that § 503 of ERISA, the origin of the exhaustion doctrine, refers only to proce-

dures regarding claims for benefits. *See, e.g., Zipf,* 799 F.2d at 891.

3. *See, e.g., Mason v. Continental Group, Inc.,* 763 F.2d 1219, 1227 (11th Cir.1985); *Kross v. Western Electric Co.,* 701 F.2d 1238 (7th Cir. 1983). However, the Seventh Circuit now permits district courts in their discretion to decide whether exhaustion should be required in a given case. *See Lindemann v. Mobil Oil Corp.,* 79 F.3d 647, 649–50 (7th Cir.1996).

ford is not bound to inform participants either that it has adopted cost-containment mechanisms or that it offers financial incentives for cost savings. *See Ehlmann v. Kaiser Foundation Health Plan,* 198 F.3d 552, 556 (5th Cir.2000) (dismissing plaintiff's argument that a duty to disclose financial incentives was implied by § 404 of ERISA); *In re Managed Care Litigation,* 150 F.Supp.2d 1330, 1356 (S.D.Fla.2001) (dismissing plaintiff's breach of fiduciary claims based on non-disclosure of cost-containment mechanisms and financial incentives).

Nechis merely asserts that Oxford's claims resolution and appeals procedures should be reformed; she does not specify the context of the requested reformation and she does not allege a basis for reformation such as fraud, mutual mistake or terms violative of ERISA. *See, e.g., AMEX Assurance Co. v. Caripides,* 316 F.3d 154, 161 (2d Cir.2003) (fraud and mutual mistake); *DeVito v. Pension Plan of Local 819 I.B.T. Pension Fund,* 975 F.Supp. 258, 267 (S.D.N.Y.1997) (reformation of plan that violated ERISA accrual provisions).

 The equitable relief available under § 502(a)(3) consists of those remedies "that were typically available in equity." *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 210, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) (internal citation omitted). On appeal, Nechis claims that injunctive relief would be appropriate to end Oxford's allegedly deceptive practices, to correct its disclosures and to reform its claims resolution procedures. However, injunctive relief is generally appropriate only when there is an inadequate remedy at law and irreparable harm will result if the relief is not granted. The basic requirements to obtain injunctive relief have always been a showing of irreparable harm and the inadequacy of legal remedies. *Ti-*

*cor Title Ins. Co. v. Cohen,* 173 F.3d 63, 68 (2d Cir.1999). Here, Nechis cannot satisfy the conditions required for injunctive relief; any harm to her can be compensated by money damages, and she could have pursued an alternative and effective remedy under § 502(a)(1)(B) of ERISA to recover the value of benefits wrongly denied.

 This leaves the question whether restitution is available as an equitable remedy under § 502(a)(3) of ERISA. Although Nechis seeks restitution, the Supreme Court, as the district court noted here, has stated that "almost invariably" suits seeking "to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages.'" *Great–West,* 534 U.S. at 213, 122 S.Ct. 708 (internal quotation omitted). "A claim for money due and owing under a contract is quintessentially an action at law." *Id.* The Supreme Court has delineated what forms of equitable restitution are available under § 502(a)(3), distinguishing permissible forms of equitable restitution such as employment of a constructive trust or of an equitable lien from forms of legal restitution. *Id.* Thus, a constructive trust or equitable lien is imposed when, "in the eyes of equity," a plaintiff is "the true owner" of funds or property, and the "money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced back to particular funds or property in the defendant's possession." *Id.* For the reasons aptly articulated by the district court, neither form of *equitable* restitution is involved here; the monies upon which Nechis seeks to impose a trust are premiums paid for health care coverage, which Oxford is under no obligation to segregate and which Nechis does not allege to be segregated in a separate account. Moreover, the language of Nechis's request for relief involves words of contract rather than those of equity, a circum-

stance that undermines her claim that the district court misconstrued the nature of the relief that she has sought. Since early on, Nechis has complained that she did not "receive[ ] the benefit of the bargain" and has requested "disgorgement of ill-gotten gains" and "restitution of premiums paid." And she persists in seeking money damages under a theory of "unjust enrichment," alleging that ERISA's remedies must be supplemented by the federal common law since the statute does not provide adequate relief in the present circumstances. We decline this invitation to perceive equitable clothing where the requested relief is nakedly contractual.

### 2. Breach of Disclosure Obligations Under §§ 102 and 104 of ERISA.

■ Nechis also alleges that Oxford failed to disclose that its decisions on chiropractic coverage were not based solely on medical necessity but instead invoked undisclosed cost-based criteria, that it provided financial incentives to Triad to deny chiropractic claims and that it intentionally and unreasonably delayed payment of covered claims to earn greater interest on premiums. Section 104(b) of ERISA requires that plan *administrators* provide notification to participants of any material reduction in benefits or services within 60 days of their effective date. 29 U.S.C. § 1024(b)(1)(B). ERISA defines an "administrator" either as someone who is "specifically designated" by plan documents or the plan sponsor; if no administrator is designated and no plan sponsor is identified, the administrator is "such other person as the Secretary may by regulation prescribe." 29 U.S.C. § 1002(16)(A). When "an employee benefit plan is estab-

lished or maintained by a single employer," the "plan sponsor" is the employer. 29 U.S.C. § 1002(16)(B)(I). However, as the district court recognized, Nechis concedes that Oxford meets none of these criteria and is therefore not the plan administrator,[4] and therefore does not have the disclosure obligations alleged.

For much the same reasons as apply to Oxford, the allegations against Triad fail, whether or not Triad is deemed to be a fiduciary, as Nechis alleges.

### 3. Leave to Amend

■ Finally, the plaintiffs contend that the district court erred in not granting them leave to amend their complaint. We review a denial of leave to amend for abuse of discretion. *Koehler v. Bank of Bermuda (New York) Ltd.,* 209 F.3d 130, 138 (2d Cir.2000). There is no abuse of discretion here; not only does Mady lack standing to sue under ERISA, but Nechis's claims also fail on their merits. We do not see how these deficiencies can be supplied by amendment.

### III.

For all these reasons, we AFFIRM the dismissal of these claims.

---

4. In her Memorandum in Opposition to Defendants' Motion to Dismiss, Nechis states that "Oxford does not designate a plan administrator in its Certificates of Coverage, or identify the plan administrator with respect to

the plaintiffs' plans. ERISA provides that when a Plan Administrator is not so designated, the employer is the default plan administrator." This statement acknowledges in effect that Oxford cannot be the administrator.