No. 05–5860–cv.

United States Court of Appeals,
Second Circuit.

Jan. 25, 2007.

Timothy M. COHANE, Plaintiff–
Appellant,

v.

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION, by and through its
President, Myles BRAND, Tom Hosty,
as an NCAA Enforcement Director
and as an employee of the NCAA, Ste-
phanie Hanna, as an NCAA Enforce-
ment Director and as an employee of
the NCAA, Jack Friedenthal, as an
employee of the NCAA and Former
Chairman of the NCAA Committee on
Infractions, Defendants–Appellees.

**14**

Sean O'Leary, O'Leary & O'Leary, Garden City, N.Y., for Appellant.

Lawrence J. Vilardo, Connors & Vilardo, LLP, Buffalo, N.Y., (Linda J. Salfrank, Jonathan F. Duncan, Spencer Fane Britt & Browne LLP, Kansas City, Mo., on the brief), for Appellees.

PRESENT: Hon. CHESTER J. STRAUB, Hon. RICHARD C. WESLEY, Circuit Judges, Hon. STEFAN R. UNDERHILL,* District Judge.

### SUMMARY ORDER

Plaintiff–Appellant Timothy M. Cohane appeals from a final order entered in the United States District Court for the Western District of New York (William M. Skretny, *Judge*), granting the motion to dismiss of Defendant–Appellee National Collegiate Athletic Association ("NCAA") and its employees involved in the NCAA's investigation of the State University of New York at Buffalo (the "University")— Defendants–Appellees Myles Brand, Stephanie Hanna, and Jack Friedenthal. The relevant facts and allegations of the complaint are fully set forth in the District Court opinion, with which we presume familiarity. *See Cohane v. NCAA*, No. 04–

cv–181S, 2005 WL 2373474 (W.D.N.Y. Sept. 27, 2005).

We review the District Court's grant of the NCAA's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) *de novo*, accepting all the material allegations of the complaint as true and affirming the dismissal only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir.2002) (internal quotation marks omitted). "This rule applies with particular force where the plaintiff alleges civil rights violations...." *Id.* (internal quotation marks omitted). "The appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir.2005).

*Statute of Limitations*

On appeal, Cohane has abandoned his claims that his forced resignation on December 3, 1999, deprived him of his *property* interest in his position as the head coach of the men's basketball team at SUNY Buffalo. Instead, he argues that the NCAA's March 21, 2001 report of its investigation (the "Report") and the University's ratification of the Report's findings, defamed him and destroyed his ability to pursue his chosen occupation. Count I alleges damages arising from the imposition of the sanctions by the NCAA in the Report is, therefore, timely. All claims for injuries occurring prior to March 19, 2001, however, are time barred. Given Cohane's specification of the Report as the instrument that caused the deprivation of his liberty interest, we reject the claim that Cohane has "has experienced a continuous practice and policy of discrimination," suf-

---

* Honorable Stefan R. Underhill of the United States District Court for the District of Connecticut, sitting by designation.

ficient to toll "the commencement of the statute of limitations period ... until the last discriminatory act in furtherance of it." *Fitzgerald v. Henderson,* 251 F.3d 345, 359 (2d Cir.2001) (internal quotation marks and citations omitted), *cert. denied,* 536 U.S. 922, 122 S.Ct. 2586, 153 L.Ed.2d 776 (2002).

Further, for substantially the reasons stated by the District Court, Count II of the complaint for tortious interference with Cohane's contractual relationship with the University is time barred. *See Cohane,* 2005 WL 2373474, at *7–8.

*State Action*

We hold that the District Court erred in concluding that Cohane could prove no set of facts showing that the NCAA was a "willful participant in joint activity with the State," *see Brentwood Academy v. Tenn. Secondary Sch. Athletic Assoc.,* 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) (internal quotation marks omitted), to deprive him of his liberty, to pursue his chosen occupation, without due process of law, *see Donato v. Plainview–Old Bethpage Cent. Sch. Dist.,* 96 F.3d 623, 630 (2d Cir.1996) (internal quotation marks omitted), *cert. denied,* 519 U.S. 1150, 117 S.Ct. 1083, 137 L.Ed.2d 218 (1997). Specifically, the District Court, relying on the Supreme Court's decision in *NCAA v. Tarkanian,* 488 U.S. 179, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988), held that the complaint failed to plead sufficiently the NCAA's "joint activity" with the University. The plaintiff in *Tarkanian* asserted that The University of Nevada at Las Vegas's ("UNLV") cooperation with the NCAA's investigation made the latter an agent of the State. 488 U.S. at 196, 109 S.Ct. 454. The Supreme Court rejected this claim because "the notion that UNLV's promise to cooperate in the NCAA enforcement proceedings was tantamount to a partnership agreement or the

transfer of certain university powers to the NCAA is *belied by the history of this case.*" *Id.* (emphasis added). In *Tarkanian,* the Supreme Court noted that during the NCAA's investigation, UNLV "denied all of the allegations" and maintained "that Tarkanian was completely innocent of wrongdoing." *Id.* at 185, 109 S.Ct. 454. The Court concluded that "the NCAA and UNLV acted much more like adversaries than like partners engaged in a dispassionate search for the truth." *Id.* at 196, 109 S.Ct. 454.

The facts relied on by the Supreme Court in *Tarkanian* were found by a Nevada state court following a two-week bench trial. *See id.* at 188, 109 S.Ct. 454. In contrast, the District Court, in this case, was required to accept all of the allegations in Cohane's complaint as true, including those describing a pattern of collusion between the University and the NCAA. In particular, the complaint alleges that the University forced Cohane's resignation immediately upon learning of the charges in an attempt to placate the NCAA (Compl. ¶¶ 27–30), actively participated in the case against Cohane in the hearings held by the Mid–American Conference and the NCAA (*id.* ¶¶ 31–33, 37), intimidated student-witnesses into giving false statements to NCAA investigators by threatening to wrongfully withhold their degrees (*id.* ¶¶ 35–36), suborned perjury at the NCAA hearing (*id.* ¶ 37), and adopted the Report and its findings thereby placing its *imprimatur* upon the defamatory statements and penalties imposed on Cohane (*id.* ¶¶ 38, 41). The allegations that the University abused its authority to confer or withhold degrees, but also that this abuse of power improperly pressured students into providing false testimony (Compl. ¶¶ 35–36), distinguish this case from *Tarkanian,* where "there [was] no suggestion of any impropriety respecting

**16**

the agreement between the NCAA and UNLV." 488 U.S. at 197 n. 17, 109 S.Ct. 454. Further in *Tarkanian*, "[t]he NCAA enjoyed no governmental powers to facilitate its investigation," including the power to subpoena witnesses. *Id.* at 197, 109 S.Ct. 454. Cohane specifically alleges that the University used its authority to compel witnesses to testify against him just as if they had been compelled by subpoena.

These non-conclusory allegations combined with the others in the complaint, if proven, could show that the University willfully participated in joint activity with the NCAA to deprive Cohane of his liberty. Cohane could show that without the State's assistance and the exercise of its coercive authority upon the student witnesses, the NCAA could not have issued the defamatory report and imposed sanctions on Cohane. Certainly, the NCAA may be able to rebut these claims and show that it did not engage in concerted action with the University, but at this point in the litigation, it was error for the District Court to interpret *Tarkanian* as holding categorically that the NCAA can never be a state actor when it conducts an investigation of a state school.

For the foregoing reasons, the judgment of the District Court is hereby **AF-FIRMED** in part, and **REVERSED** in part. This case is remanded for further proceedings consistent with this order.