**Earl HAYES, Plaintiff,**

v.

**Detective PEROTTA, Officer Terrence S. Beam, Officer John S. Remsen, Officer Marquis E. Vandewater, Canine Officer Gero, The City of Poughkeepsie Police Dept., The City of Poughkeepsie, Defendants.**

**Case No. 09–CV–2458 (KMK).**

United States District Court, S.D. New York.

Sept. 30, 2010.

Earl Hayes, Johnstown, NY, pro se.

David L. Posner, Esq., McCabe & Mack LLP, Poughkeepsie, NY, for Defendants.

*OPINION AND ORDER*

KENNETH M. KARAS, District Judge:

Plaintiff Earl Hayes ("Plaintiff"), proceeding pro se, brings this suit against five officers of the City of Poughkeepsie Police Department, as well as the City of Poughkeepsie and the City of Poughkeepsie Police Department, (collectively, "Defendants"). While the Complaint does not state a specific cause of action, the Court construes it as alleging a violation of Plaintiff's Fourth Amendment rights pursuant to 42 U.S.C. § 1983.[1] Defendants move to dismiss this suit. (Dkt. No. 19.) For the forgoing reasons, that motion is granted in part and denied in part.

## I. Background

### A. Facts

The following facts, taken from the Complaint, are assumed to be true for the purpose of this motion. According to Plaintiff, on October 26, 2005, Detective Perotta, and Police Officers Terrence S. Beam, John S. Remsen, Marquis E. Vandewater, and Canine Officer Gero of the Poughkeepsie Police Department (collectively, "Individual Defendants") unlawfully searched Plaintiff's residence without a search warrant.[2] (Compl. § II.D.) The Individual Defendants allegedly seized Plaintiff's laptop computer and turned it over to the Sullivan County Sheriff's Office, along with other information that they discovered during the search. (*Id.*) The Sullivan County authorities allegedly incorporated the information obtained from the Individual Defendants, particularly information stored on Plaintiff's laptop, into an application for a warrant to search Plaintiff's residence. (*Id.*) The Sullivan County authorities obtained a warrant and searched Plaintiff's home that same night, October 26, 2005.(*Id.*)

Among the injuries which Plaintiff allegedly suffered from the allegedly unlawful

---

1. Pleadings submitted by pro se litigants are held to a lesser standard than those drafted by attorneys. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008) ("Even in the formal litigation context, pro se litigants are held to a lesser pleading standard than other parties."). Indeed, the Court construes Plaintiff's pleadings liberally and interprets them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir.2006) (internal quotation marks and emphasis omitted).

2. The Complaint provides no first names for Detective Perotta or "Canine Officer" Gero.

search include his criminal conviction in New York state court. (*Id.* § III ("I suffered a loss of liberty because of the defendants' actions....").) Other alleged injuries stem directly from the purportedly illegal search and seizure, irrespective of Plaintiff's subsequent conviction. (*Id.* (noting that Plaintiff lost property seized during the search including two computers and other computer equipment).) Finally, Plaintiff mentions a number of injuries for which it is unclear whether they were caused by the conviction or the search itself. (*Id.* (alleging that Plaintiff suffers depression, anxiety, and strained relationship with friends and family, as well as a loss of consortium with his fiancée).)

Plaintiff's Complaint omits a number of material facts, of which the Court may take judicial notice. In particular, from court proceedings (including transcripts and judicial opinions), *see In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 354 n. 5 (2d Cir.2010) (noting that courts may take judicial notice of matters of public record); *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir.2008) (" '[C]ourts routinely take judicial notice of documents filed in other courts ... to establish the fact of such litigation and related filings.' " (alteration in original) (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir.1991))), it is apparent that during the New York state criminal proceedings against Plaintiff, the trial court held a suppression hearing at which Plaintiff could have, but did not, challenge the admission of any evidence which he believed was wrongfully seized from his home. (Aff. ("Posner Aff.") Ex. E.) Instead, Plaintiff challenged the lawfulness of the seizure of property from his person (while in a Wal–Mart parking lot and not in his residence) and his post-arrest statements. (*Id.* Ex. E.) The trial court nonetheless held that the warrant related to the search of Plaintiff's residence was valid. (*Id.* Ex. E at 9.)

Also, Plaintiff was convicted only after he pled guilty to six of the twenty-nine counts for which he was indicted. (*Id.* Exs. C, F.) In particular, Plaintiff was convicted of three counts of criminal possession of a forged instrument in the second degree, in violation of N.Y. Penal Law § 170.25, and one count each of criminal possession of stolen property in the third degree, in violation of N.Y. Penal Law § 165.50, a scheme to defraud in the first degree, in violation of N.Y. Penal Law § 190.65(1)(a), and identity theft in the third degree, in violation of N.Y. Penal Law § 190.78. (*Id.* Exs. C, F–G.) Plaintiff subsequently sought to withdraw his plea, but his application was denied in a written opinion by Justice Ledina. (*Id.* Ex. G.) Plaintiff then appealed his conviction (*Id.* Ex. H), and that appeal is pending.

### B. Procedural History

On March 18, 2009, Plaintiff filed the Complaint. (Dkt. No. 2.) Defendant answered on June 29, 2009. (Dkt. No. 6.) On January 29, 2010, Defendant moved to dismiss the Complaint. (Dkt. No. 19.) Plaintiff opposes this motion, and has sought to amend the Complaint with fresh allegations against his criminal counsel and the trial judge. (Dkt. No. 23.)

### II. Discussion

### A. Standard of Review

"On a Rule 12(b)(6) motion to dismiss a complaint, the court must accept a plaintiff's factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Gonzalez v. Caballero,* 572 F.Supp.2d 463, 466 (S.D.N.Y.2008); *see also Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) ("We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (internal quotation marks

omitted)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (alteration in original) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.,* and "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, 127 S.Ct. 1955.

Simply put, Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955. If Plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.; see also Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) ("Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (internal citation omitted) (quoting Fed.R.Civ.P. 8(a)(2))).

Finally, in adjudicating a Rule 12(b)(6) motion, a court must confine "[its] consideration to facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference," or facts of which the Court may take judicial notice. *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005); *see*

*also Leonard F. v. Isr. Disc. Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir.1999).

## B. *Analysis*
### 1. *Claims against the Municipal Defendants*

■ Plaintiff named the City of Poughkeepsie ("Poughkeepsie") and the City of Poughkeepsie Police Department ("PPD") as Defendants (collectively, "the Municipal Defendants") in this case. However, "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of N.Y.C.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Thus, "to prevail on a claim against a municipality under Section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury,* 542 F.3d 31, 36 (2d Cir.2008), *cert. denied,* —— U.S. ——, 130 S.Ct. 95, 175 L.Ed.2d 234 (2009). The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *see also Newton v. City of New York,* 566 F.Supp.2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right."). In other words, a municipality may not be liable under Section 1983 "by application of the doctrine of *respondeat superior.*" *Pembaur v. City of Cincinnati,* 475 U.S. 469, 478, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (emphasis in original); *see also Vassallo v. Lando,* 591

F.Supp.2d 172, 201 (E.D.N.Y.2008) (noting that "a municipal entity may only be held liable where the entity itself commits a wrong" (emphasis in original)). Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *see also City of St. Louis v. Praprotnik,* 485 U.S. 112, 122, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) ("[G]overnmental bodies can act only through natural persons ... [and] governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights."). Moreover, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [government]." *Newton,* 566 F.Supp.2d at 271; *see also City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle,* 200 F.Supp.2d 411, 427 (S.D.N.Y.2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation."). In the end, therefore, "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." *Roe,* 542 F.3d at 37 (quoting *Brown,* 520 U.S. at 404, 117 S.Ct. 1382).

■ "In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'" *Davis v. City of New York,* 228 F.Supp.2d 327, 336 (S.D.N.Y.2002),

*aff'd,* 75 Fed.Appx. 827 (2d Cir.2003). "The Supreme Court has identified at least two situations that constitute a municipal policy: (1) where there is an officially promulgated policy as that term is generally understood (*i.e.,* a formal act by the municipality's governing body), and (2) where a single act is taken by a municipal employee who, as a matter of State law, has final policymaking authority in the area in which the action was taken." *Newton,* 566 F.Supp.2d at 271 (internal footnote omitted) (citing *Monell,* 436 U.S. at 690, 98 S.Ct. 2018, and *Pembaur,* 475 U.S. at 480–81, 106 S.Ct. 1292). "A municipal 'custom,' on the other hand, need not receive formal approval by the appropriate decisionmaker...." *Id.* Instead, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Cnty. Comm'rs,* 520 U.S. at 404, 117 S.Ct. 1382; *see also Kern v. City of Rochester,* 93 F.3d 38, 44 (2d Cir.1996) (noting that a municipality's custom "need not be memorialized in a specific rule or regulation"). To prevail on this theory of municipal liability, however, a plaintiff must prove that the custom at issue is well-settled. *See Praprotnik,* 485 U.S. at 127, 108 S.Ct. 915 (noting that the Supreme Court "has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law'" (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)) (internal quotation marks omitted)).

■ Here, Plaintiff does not state a § 1983 claim against Poughkeepsie, be-

cause the Complaint is devoid of *any* reference to anything that could be considered Poughkeepsie's policy or custom regarding warrantless searches. Instead, Plaintiff has, at most, alleged a single instance of unconstitutional misconduct by employees of Poughkeepsie, which, of course, falls far short of the bar he must clear to survive Defendants' Motion. Plaintiff's claim against the PPD likewise fails for the same reason, and because the department is an agency of the city, which is the real party in interest. *See Bowman v. City of Middletown*, 91 F.Supp.2d 644, 648 n. 1 (S.D.N.Y.2000) ("It is well settled that in a suit alleging deprivation of constitutional rights by an agency of a municipality, such as a police department, the municipality, not the agency, is the real party in interest, and the proper named party in the action.").

The Complaint does allege that Poughkeepsie wrongly refused to provide Plaintiff with information that he requested in 2006 and 2007. This allegation does not state a § 1983 claim, as it is not rooted in a claimed constitutional or federal statutory right. Rather, the allegation is governed by New York's Freedom of Information Law ("FOIL"). *See* N.Y. Pub. Off. Law §§ 84–90. Under FOIL, challenges of information denials must be brought in an Article 78 proceeding. *See id.* § 89(4). As with all Article 78 proceedings, such challenges must be filed "within four months after the determination to be reviewed becomes final." N.Y. C.P.L.R. § 217(1). Because Plaintiff did not file this claim until March 2009, and because he does not appear to have ever brought an Article 78 proceeding, this claim is dismissed.

The Court recognizes that Plaintiff has, in opposing the instant motion, sought leave to amend his complaint. The Court will grant that application, but notes that nothing in the narrative Plaintiff has provided about that putative amended complaint describes any allegations he could make that would substantiate a § 1983 claim against the Municipal Defendants. Nonetheless, because the Court will allow Plaintiff to seek leave to amend his complaint, the motion to dismiss the Municipal Defendants is granted without prejudice.

### 2. Claims against Individual Defendants

The Individual Defendants proffer two reasons for their dismissal from this lawsuit. First, they argue that Plaintiff's claim linking the allegedly unlawful search to his conviction, and his efforts to obtain damages therefrom, is barred by the Second Circuit's decision in *Townes v. City of New York*, 176 F.3d 138 (1999). (Defs.' Mem. of Law in Supp. of Dismissal ("Defs.' Mem.") 6.) Second, they argue that the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), bars recovery against them. (Defs.' Mem. 11.)

In *Townes*, the Second Circuit rejected application of the so-called "fruit of the poisonous tree doctrine" to § 1983 actions. 176 F.3d at 145–46 ("The fruit of the poisonous tree doctrine cannot link the unreasonable seizure and search to Townes's conviction and incarceration because this evidentiary doctrine is inapplicable to civil § 1983 actions."). According to the *Townes* court, this doctrine "disregards traditional causation analysis to serve different objectives" in the criminal context, and therefore does not fit into the § 1983 context, which is analogous to "state common law tort actions, serving primarily the tort objective of compensation." *Id.* at 146. Instead, the inquiry of any § 1983 claim like that made by Plaintiff here, is whether the "conviction and incarceration were proximately (or legally) caused by the defendants' constitutional torts." *Id.* In *Townes*, the court noted that the chain of causation was, in fact, broken by the

"trial court's failure to suppress the evidence concerning Townes's own criminal acts [which] constituted a superseding cause of Townes's conviction and imprisonment." *Id.* at 147. Because Townes had "not ple[ ]d conduct tantamount to malicious prosecution or false imprisonment," and instead only alleged a violation of his Fourth Amendment rights from an unlawful search, the trial court's "independent judgment in deciding not to suppress the evidence, though later ruled to be erroneous, broke the chain of causation for purposes of § 1983 liability." *Id.* So, "in the absence of evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment," which could include judges or prosecutors, a plaintiff "cannot recover damages for his conviction and incarceration" from police officers alleged to have conducted an illegal search. *Id.*

Separate from causation limitations, the Second Circuit also held in *Townes* that the plaintiff was independently barred from recovery on the theory that "the injury he ple[ ]d (a violation of his Fourth Amendment right to be free from unreasonable searches and seizures) d[id] not fit the damages he s[ought] (compensation for his conviction and incarceration)." *Id.* at 147. According to the *Townes* court, "constitutional tort liability under § 1983 is limited to the kind of injury that the constitutional right at issue was designed to prevent." *Id.* at 148 (internal quotation marks and brackets omitted). So, while recovery for injuries that directly result from an unlawful search is permissible, to allow more would be disproportionate to the constitutional harm itself. *Id.* Put another way, compensating a victim of an unlawful search for damages from a subsequent conviction, in addition to the compensation presumably provided by suppression of the fruit of the poisonous tree, would, in the Second Circuit's view, "vastly overdeter police officers and would result in a wealth transfer that is peculiar, if not perverse." *Id.* (internal quotation marks omitted).

Here, Plaintiff seeks compensation at least in part for the consequences he says he suffered from his conviction, which he alleges (his guilty plea notwithstanding) was caused by the allegedly illegal search. It is this latter claim that is in the sights of the Individual Defendants' *Townes* argument. Indeed, as originally pled, Plaintiff's attempt to link the allegedly illegal search to his conviction is barred by *Townes*. After the allegedly unlawful search, the prosecutor elected to proceed with the indictment of Plaintiff (after presentation to the grand jury), Plaintiff's trial counsel elected not to challenge the legality of the home search, the trial judge determined the unchallenged home search to have been legal, and then Plaintiff decided to plead guilty. (Posner Aff. Ex. E at 9 (noting, by the trial court, that the warrant was supported by "information sufficient to support a reasonable belief that a crime had been committed, and/or that evidence of a crime could be found in the defendant's apartment," and that the warrant "was duly executed, and the evidence seized thereunder [was] admissible"); *id.* Ex. F.) Any one of these constitutes a break in the chain between the purportedly unlawful search and Plaintiff's conviction, even if the prosecution could not have happened without the fruits of the search. *See Townes,* 176 F.3d at 147 (noting that even if the unlawful search was the "but for" cause of law enforcement's discovery of incriminating evidence, "the trial court's failure to suppress the evidence ... constituted a superseding cause of Townes's conviction and imprisonment" (emphasis omitted)); *see also Wray v. City of New York,* 490 F.3d 189, 193 (2d Cir.2007) (holding that "in the absence of evidence" that the law enforcement officials had "misled or pressured the prose-

cution or trial judge," the chain of causation between the unlawful conduct and conviction was broken by "the ill-considered acts and decisions of the prosecutor and trial judge").

Moreover, as noted, *Townes* expressly limits the damages Plaintiff can recover from the allegedly unlawful search to those that directly resulted from the search itself, and not to the prosecution. *See Townes,* 176 F.3d at 148. The Court recognizes that Plaintiff does not limit his damages claim to the conviction and incarceration he says resulted from the allegedly unlawful search. He also seeks damages for the harms he says were inflicted from the search itself. Indeed, *Townes* did not foreclose such a claim, and so even if Plaintiff cannot prevail from a claim based on his conviction, he may still attempt to recover damages from the loss of privacy and/or property from the search. *See id.* ("Victims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy—including (where appropriate) damages for physical injury, property damage, [and] injury to reputation...."); *Davenport v. County of Suffolk,* No. 99–CV–3088, 2007 WL 608125, at *7 (E.D.N.Y. Feb. 23, 2007) (noting that while plaintiff's claim for damages from prosecution allegedly the result of an invalid search could not be recovered under *Townes,* damages from the search itself could, even if such damages are "slight or nominal"). Furthermore, Plaintiff has indicated a desire to amend his complaint to allege further misconduct by others involved in his prosecution, such as his counsel, the prosecutors, and the trial judge. Without commenting on the extent to which any of these claims could be brought against these individuals, *see Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) ("[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for

trial, and which occurred in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."); *Mireles v. Waco,* 502 U.S. 9, 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam) ("A long line of this Court's precedents acknowledges that, generally, a judge is immune from a suit for money damages."), Plaintiff will be allowed to seek leave to bring these claims, if only to let Plaintiff explore whether he has a viable malicious prosecution claim, which could distinguish his case from *Townes,* 176 F.3d at 149 (noting that because Townes had "fail[ed] to allege that the defendants' conduct effectively amounted to malicious prosecution," damages related to his conviction that allegedly were the product of an unlawful search could not be sought). Thus, Defendants' motion to dismiss Plaintiff's Fourth Amendment claim is granted to the extent it bars Plaintiff from seeking damages from his conviction and incarceration, which allegedly followed the unlawful search. It is denied to the extent that Plaintiff may still pursue his Fourth Amendment claim and seek damages from the search itself. However, Plaintiff may seek leave to amend his complaint consistent with this Opinion.

The Individual Defendants also argue that the claims against them are barred by *Heck.* (Defs.' Mem. 11.) In *Heck,* the Supreme Court held that, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed...." 512 U.S. at 486–87, 114 S.Ct. 2364 (internal footnote omitted). But, *Heck* did not hold that a conviction immunizes law enforcement officials for all conduct they undertook in support of that prosecution. Indeed, the *Heck* Court specifically noted that "if the district court

determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id.* at 487, 114 S.Ct. 2364. "For example," the Court continued in a footnote, "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction," because "such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful." *Id.* at 487 n. 7, 114 S.Ct. 2364.

The Individual Defendants are correct in noting that the Complaint alleges some injuries, such as the loss of liberty, that resulted from Plaintiff's conviction, which itself allegedly is linked to the unlawful search. (Defs.' Mem. 12.) But, the Complaint also alleges damage to Plaintiff's property, mental health, and interpersonal relationships. To the extent these injuries were caused by the search itself, and are separate from "the 'injury' of being convicted and imprisoned," *Heck* does not bar recovery. *Heck,* 512 U.S. at 487 n. 7, 114 S.Ct. 2364. Moreover, it cannot be said that a determination that the search was unlawful would necessarily yield the conclusion that Plaintiff's conviction was unlawful, especially in light of his guilty plea. Therefore, *Heck* is not, at this time, a reason to dismiss Plaintiff's Fourth Amendment claim.

### 3. Request to Amend the Complaint

As noted, in his response to Defendant's motion to dismiss, Plaintiff requested leave to amend the Complaint. (Pl.'s Resp. to Defs.' Mem. of Law in Supp. of Dismissal 1.) Plaintiff would like to add several new defendants: the judge and prosecutors in

Plaintiff's criminal case, Plaintiff's own attorneys in that case, two Sullivan County detectives, and Wal–Mart, Inc. (*Id.*) Plaintiff would also like to make more detailed factual allegations. (*Id.*) The Court shall reserve judgment on this request until Plaintiff files a proposed amended complaint. Before submitting the proposed amended complaint, Plaintiff should read this Opinion carefully. Plaintiff is to submit his proposed amended complaint and any supporting memoranda within 30 days of the date of this Opinion.[3] Defendants will have 30 days to submit their opposition. Plaintiff will have 14 days to reply.

### III. Conclusion

Accordingly, Defendants' motion to dismiss is granted in part and denied in part. Plaintiff's claims against the City of Poughkeepsie and City of Poughkeepsie Police Department are dismissed without prejudice, including his claim that Poughkeepsie wrongly refused to provide him with information that he requested in 2006 and 2007. Defendants' motion to dismiss Plaintiff's Fourth Amendment cause of action is granted in part, but again, without prejudice. Plaintiff may still seek to recover damages he claims were the direct result of the search itself. The Clerk of the Court is respectfully directed to terminate the pending motion. (Dkt. No. 19.)

SO ORDERED.

---

**3.** If Plaintiff submits a proposed amended complaint, the Parties should consider the potential collateral estoppel or res judicata effects, if any, from Plaintiff's criminal proceedings.