NEW YORK STATE PSYCHIATRIC ASSOCIATION, INC., in a representational capacity on behalf of its members and their patients, Michael A. Kamins, on his own behalf and on behalf of his beneficiary son, and on behalf of all other similarly situated health insurance subscribers, Jona-

than Denbo, on his own behalf and on behalf of all other similarly situated health insurance subscribers, Brad Smith, on his own behalf and on behalf of his beneficiary son, and on behalf of all other similarly situated health insurance subscribers, Jordan Olin, on his own behalf and on behalf of his beneficiary son, and on behalf of all other similarly situated health insurance subscribers, and Julie Ann Allender, Ed.D., and Shelly Menolascino, M.D., on their own behalf and in a representational capacity on behalf of their beneficiary patients and on behalf of all other similarly situated providers and their patients, Plaintiffs,

v.

UNITEDHEALTH GROUP, UHC Insurance Company, United Health–Care Insurance Company of New York, United Behavioral Health, Defendants.

No. 13 Civ. 1599 CM.

United States District Court, S.D. New York.

Oct. 31, 2013.

Anthony Frank Maul, Donn Brian Hufford, Jason Samuel Cowart, Robert J. Axelrod, Brian Lee Poulter, Pomerantz Grossman Hufford Dahlstrom & Gross LLP, New York, NY, Meiram Bendat,

Psych–Appeal, Inc., Pro Hac, Vice, West Hollywood, CA, Heather Michelle–Mason McKeon, Michael Lee Cohen, Cohen McKeon LLP, Los Angeles, CA, for Plaintiffs.

Andrew John Holly, Michelle S. Grant, Stephen Paul Lucke, Dorsey & Whitney, LLP, Minneapolis, MN, Elizabeth Rozon Baksh, Richard Howard Silberberg, Dorsey & Whitney LLP, New York, NY, for Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

McMAHON, District Judge:

### PRELIMINARY STATEMENT

This is essentially a denial of benefits case under the Employee Retirement Income Security Act ("ERISA") (29 U.S.C. § 1001 *et. seq*). It is brought by a polyglot group of unrelated plaintiffs who either (1) applied to their employer-sponsored health plans (and in one case, to a non-ERISA plan offered by the State of New York) for reimbursement of the cost of mental health care or substance abuse treatment (plaintiffs Denbo, Smith, Olin, and Kamins), or (2) provided mental health care for which their patients were not fully reimbursed by their employer-sponsored health plans (plaintiffs Allender, Menolascino, and the New York State Psychiatric Association ("NYSPA")). In each instance, Defendants UnitedHealth Group Incorporated ("UHG") or one of three subsidiaries, UnitedHealthcare Insurance Company ("UHIC"), UnitedHealthcare Insurance Company of New York ("UHIC–NY"), and United Behavioral Health ("UBH") (collectively, "United") had something to do with the denial of benefits sought. Plaintiffs bring a variety of claims

against United, alleging violations of ERISA, the Mental Health Parity and Addiction Equity Act ("Parity Act") (Pub.L. No. 110–343, § 511 *et. seq*), the Patient Protection and Affordable Care Act ("ACA") (Pub.L. No. 111–148), the New York Parity Act (N.Y. Ins. Law § 3221(1)(5), *et seq.*), the New York Deceptive Trade Practices Act (N.Y.G.B.L. § 349), and the New York Prompt Pay Statute (N.Y. Ins. Law § 3224–a). All of the individual plaintiffs charge that United applies a different standard to requests for reimbursement of the cost of mental health and substance abuse treatment, as opposed to medical or surgical treatment, and that United wrongly denied them or their assignors mental health benefits to which they were entitled under their health plans. Some plaintiffs claim that they were not allowed to take appeals from denials of benefits, or that inadequate procedures were followed in appeals.

Plaintiffs seek money damages and an injunction requiring United to treat mental health or substance abuse benefits no less favorably than it treats medical or surgical benefits when it assesses whether claims are reimbursable under various employer-sponsored health plans.

United moves to dismiss all the claims asserted against it pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). Defendants argue that every plaintiff fails to state a claim against it, and that the NYSPA lacks standing to pursue any claim. Plaintiffs cross-move for a preliminary injunction under Rule 65(a) seeking to enjoin United's practices that allegedly violate mental health parity laws.

As to all claims, the motion to dismiss is granted. In view of the outcome of the motion to dismiss, the motion for preliminary injunction is denied as moot.

## Standard of Review

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cargo Partner AG v. Albatrans, Inc.,* 352 F.3d 41, 44 (2d Cir.2003); *see also Roth v. Jennings,* 489 F.3d 499, 510 (2d Cir.2007).

However, to survive a motion to dismiss, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (internal quotations, citations, and alterations omitted). Thus, unless a plaintiff's well-pleaded allegations have "nudged [its] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Id.* at 570, 127 S.Ct. 1955; *see also Iqbal,* 129 S.Ct. at 1950–51.

On a motion to dismiss, the well-pleaded allegations of the complaint are presumed true. *See id.* at 1949–50. Conclusory allegations of fact and allegations of law are not. *See id.* Additionally, any document that is pleaded or relied upon by a plaintiff in a complaint is deemed incorporated into that complaint—even if it is not physically appended to the complaint—and the entire text of that document may be considered on the motion to dismiss without converting the motion to a motion for summary judgment. *See Rothman v. Gregor,* 220 F.3d 81, 88–89 (2d Cir.2000) (citing *Cortec Indus. Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47–48 (2d Cir.1991)); *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.,* 75 F.3d 801, 808 (2d Cir.1996).

To survive a motion to dismiss for lack of subject-matter jurisdiction based on standing pursuant to Rule 12(b)(1), the plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL,* 671 F.3d 140, 145 (2d Cir.2011). If the defendants challenge only the legal sufficiency of the jurisdictional allegations, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Robinson v. Gov't of Malaysia,* 269 F.3d 133, 140 (2d Cir.2001). Where the defendants place jurisdictional facts in dispute, however, the court may properly consider "evidence relevant to the jurisdictional question [that] is before the court." *Robinson,* 269 F.3d at 140; *see also Amidax,* 671 F.3d at 145.

## CONCLUSIONS OF LAW

This is really seven different lawsuits amalgamated (inappropriately) in a single caption. In order to assess the merits of the motion to dismiss, the case must be broken into its component parts, each of which must be analyzed separately.

### A. The Claims of Plaintiffs Denbo, Smith, and Olin Are Dismissed.

#### 1. The Plaintiffs

**Denbo:** Plaintiff Jonathan Denbo is an employee of CBS Sports Network ("CBS")

and receives health insurance through the CBS Medical Plan ("CBS Plan"). *See* FAC ¶ 19. The CBS Plan covers outpatient mental health services, subject to retrospective reviews, which are reviews that occur after treatment has been provided to determine whether it was medically necessary and thus covered by the plan. *See id.* ¶¶ 20, 100–01. The CBS Plan is a self-insured plan, which means that CBS itself pays all the benefits due to plan participants under the terms of the plan; CBS does not purchase insurance, from United or anyone else, in order to cover the cost of benefits owed to employees. *See* Pennington Decl. Ex. A at 150–52.

According to the Plan Document, the "Plan Administrator" for the CBS Plan is a CBS-related entity—the CBS Retirement Committee. *See id.* at 151. "Administrator" is a term of art under ERISA. It is defined as "the person specifically so designated by the terms of the instrument under which the plan is operated" or "if an administrator is not so designated, the plan sponsor." 29 U.S.C. § 1002(16)(A).

The FAC alleges that Defendant UHIC is the "Claims Administrator" of the CBS Plan. *See* FAC ¶ 35. The Plan Document states that a Claims Administrator has "exclusive authority and sole and absolute discretion to interpret and to apply the rules of the Plan to determine claims for Plan benefits." *See* Pennington Decl. Ex. A at 152. It further states that the Claims Administrator "determines whether [a beneficiary has] incurred a covered expense for which benefits are payable from the Plan and determines the amount of, and administers the payment of, any such benefits based on information contained in the written claim." *See id.*

The FAC alleges that Denbo obtained medically necessary mental health treatment—psychotherapy—for depressive and anxiety disorders. *See* FAC ¶ 20. He submitted claims for coverage to United, which processed the claims through UHIC and UBH. *See id.* at 14, 34–45. Denbo contends that his claims were improperly subjected to concurrent and prospective (rather than retrospective) reviews, meaning that United intervened to review the medical necessity of care contemporaneously with treatment and to make claims determinations for ongoing and future treatment before that treatment was provided. *See id.* at 34–45. Specifically, a representative of United contacted Denbo's health care provider to discuss his ongoing outpatient mental health treatment, and two days later the representative told the provider that United would no longer cover such treatment. *See id.* ¶ 108. On May 18, 2012, United allegedly sent Denbo a letter, informing him that United had reviewed his ongoing treatment plan and that the plan "does not meet UBH criteria for benefit coverage at this time." *See id.* ¶ 108. The letter informed Denbo that, given his "adequate reduction/resolution in clinical symptoms," United would cover only three more treatment sessions. *See id.* Denbo and his provider appealed this decision to no avail. *See id.* at 38–43. United responded to the appeal on May 30, 2012, stating that the "benefit coverage is not available for outpatient therapy sessions beginning 05/11/2012 and forward ..." *See id.* ¶ 111. United allegedly refused to consider the second appeal letter submitted by Denbo's provider. *See id.* ¶ 119.

Denbo contends that United's prospective and concurrent reviews violated the terms of the CBS Plan, which permits only retrospective reviews of coverage. *See id.* ¶¶ 100–01, 109. The FAC also alleges that "United" did not provide Denbo with a second level of appeal, to which he was allegedly entitled under the terms of the Plan. *See id.* at 42–43.

**Smith:** Plaintiff Brad Smith is an employee of SYSCO Seattle, Inc., a subsidiary of SYSCO Corporation ("SYSCO"). He and his family receive health insurance through the SYSCO Corporation Group Benefits Plan ("SYSCO Plan"). *See id.* ¶ 21. Like the CBS Plan, the SYSCO Plan is self-insured. *See* Strange Decl. Ex. A at 11–12. As with the CBS Plan, a SYSCO-related entity, the SYSCO Administrative Committee, is designated in the Plan Document as the Plan Administrator. *See id.* at 12. Defendant UBH is the claims administrator for the SYSCO Plan's mental health benefits, and Blue Cross Blue Shield of Illinois ("BCBS") is the claims administrator for the Plan's medical and surgical benefits. *See id.* at 18, 114; FAC ¶ 21.

The SYSCO Plan provides coverage for medically necessary mental health treatment. *See id.* ¶ 22; Strange Decl. Ex. A at 114–16. As a claims administrator, UBH is given "discretionary authority to (i) construe and interpret the terms of the Plan, and (ii) determine the validity of charges submitted to [United] under the Plan." FAC ¶ 21; *see also* Strange Decl. Ex. A at 12–13. The SYSCO Plan also gives UBH discretion to determine what care is medically necessary. *See id.* at 105; FAC ¶¶ 22, 151. The SYSCO plan confers on UBH full responsibility for the review of "urgent" and "concurrent" care claims. *See id.* at 49–50; Strange Decl. Ex. A at 16. An urgent care claim is "any pre-service claim or concurrent care decision . . . that must be reviewed quickly in order to avoid jeopardizing your life, health, or ability to regain maximum function . . ." FAC at ¶ 147. A concurrent care claim is one that concerns "an *ongoing* course of treatment that is to be provided over a period of time or for a specified number of

treatments . . ." *Id.* at ¶ 148 (emphasis added).

If a claim is denied, plan participants have a right to appeal; the plan provides for one level of appeal for "urgent" and "concurrent" care claims. *See id.* at 49–50; Strange Decl. Ex. A at 16.

The FAC alleges that Smith's son "Daniel,"[1] a beneficiary under Smith's policy, has been treated for severe mental illness since 2005. *See* FAC ¶ 23. His care has included medication, outpatient psychotherapy, and residential psychiatric treatment. *See id.* The FAC asserts that UBH uses a definition of "medical necessity" in assessing mental health claims that gives it "far greater discretion to deny care" than the definition BCBS uses when assessing medical claims. *See id.* at 50–51. BCBS's definition is allegedly tied to "generally accepted standards of medical practice," whereas UBH's definition relies on "internally-developed guidelines." *See id.* at ¶¶ 152–54. According to the FAC, UBH also imposed something called a "fail-first" policy on applications for mental health benefits. "Fail-first" means that the Plan will not reimburse for a particular level of care until less intensive levels of care are tried first, and fail. *See id.* at 11, 52.

Smith alleges that UBH prematurely terminated coverage for his son's residential mental health treatment. *See id.* at 48. On April 2, 2012, UBH sent Smith a letter stating that coverage was not available for Daniel's ongoing residential treatment "from 3/29/12 forward" and that "treatment could be safely and effectively delivered at a lower level of care" on an outpatient basis. *See id.* at 54; Massey Decl. Ex. A at 1. According to Smith, no such outpatient treatment is available in the community in which the Smith family

---

1. "Daniel" is not his real name.

lives. *See* FAC at 53, 57. Daniel's provider appealed, and UBH issued a "Final Adverse Determination of [Smith's] internal appeal." *See id.* at 55–57; Massey Decl. Ex. B at 3. UBH also denied coverage for Daniel's outpatient treatment, allegedly without providing any explanation. *See* FAC ¶ 168; Maul Decl. Ex. 4.

**Olin:** Plaintiff Jordan Olin is an employee of Oracle Corporation ("Oracle"). *See* FAC ¶ 25. He and his family receive health insurance through the Oracle Corporation Flexible Benefits Plan ("Oracle Plan"). *See id.* The Oracle Plan is a self-insured plan which designates the employer (Oracle) as the Plan Administrator. *See* Percoski Decl. Ex. A at 147–48. United (through UHIC) is designated as a "Third Party Administrator and Claims Fiduciary" for the Oracle Plan. *See id.* at 149. The Plan Document states that UHIC has "discretion and authority to determine on Oracle's behalf whether a treatment or supply is a Covered Health Service and how the Eligible Expense will be determined." *See id.* at 151. UHIC also "serves as the final review committee and, in its sole discretion, has the authority to interpret Plan provisions as well as facts and other information related to claims and appeals ..." *See id.* As a claims administrator, UHIC determines benefits claims and processes appeals for Plan participants. *See id.*

The Oracle Plan provides mental health coverage. *See id.* at 30–32; FAC ¶ 181. The FAC alleges that Olin's son "Sean," [2] who is a beneficiary under Olin's policy, suffers from severe mental illness and substance abuse problems. *See id.* ¶¶ 28, 169–74. Sean was admitted to two separate residential treatment centers in November 2012 and March 2013. *See id.* at 58–60. Both times, UHIC allegedly refused to authorize coverage for the residential

treatment, stating that Sean's condition did not meet its guidelines for such a high level of care. *See id.* at 61–64; Hufford Decl. Ex. 45 at 1; Hunt Decl. at 2; Massey Decl. Ex. F at 2. United's case notes from the March 2013 denial cite "no evidence of further deterioration" and conclude that Sean "could be treated safely and effectively at the mental health/dual diagnosis partial hospital level of care;" given these findings, United determined that residential care was unnecessary and not covered by the Plan. *See id.*

UHIC also rejected first-level appeals in November 2012 and March 2013 and allegedly failed to offer Olin the second-level appeals required by the Oracle Plan terms. *See* FAC at 61–71. Olin states that United referred his March 2013 appeal of his benefit denial to an "independent review organization," an external entity sometimes employed by a claims administrator to assist in processing appeals. *See id.* at 71–72. These reviewers allegedly delayed their reviews in violation of plan terms and failed to conduct *de novo* reviews. *See id.*

Based on these events, Olin claims that UHIC applied strict treatment limitations, such as fail-first policies, to mental health claims that it did not apply to medical claims. *See id.* at 65–67. He also asserts that UHIC did not adjudicate his appeals in accordance with federal law.

### 2. The Claims Brought By Denbo, Smith, and Olin

Denbo, Smith, and Olin bring three claims (Counts 1, 3, and 5) against United, all of which essentially allege that United improperly denied them benefits in violation of the terms of their respective ERISA plans and of federal law.

Count 1 charges United with violating its fiduciary duty to Denbo, Smith, and

---

2. "Sean" is not his real name.

Olin by failing to comply with the Mental Health Parity and Addiction Equity Act ("Parity Act"), *see* FAC at 126–27, which, generally speaking, requires ERISA plans that offer coverage of mental health care to do so on par with their coverage of medical and surgical care. *See* 29 U.S.C. § 1185a. The fiduciary duty allegedly imposed on United derives from ERISA § 404(a)(1), which provides "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA Subchapter I]." *Id.* § 1104(a). Plaintiffs seek to enforce this fiduciary duty through ERISA § 502(a)(3).

Count 3 charges United with violating the terms of the CBS, SYSCO, and Oracle Plans by denying the plaintiffs benefits to which they were entitled, in violation of §§ 502(a)(1)(B) and (a)(3) of ERISA. *See* FAC at 129–30. Specifically, plaintiffs assert that United violated plan terms by under-reimbursing mental health claims, failing to adhere to general standards of medical necessity, and performing prospective and concurrent reviews (as opposed to retrospective reviews) in instances when not authorized to do so by relevant plan terms.[3] *See id.* at 129–30. They claim that United is liable to them under § 502(a)(1)(B) because it was an "administrator" of the three Plans. *See id.* at 14–15; *see also* Pl. Br. at 12–16. Alternatively, plaintiffs urge that

United, as claims administrator under each of the three Plans, owed plaintiffs a fiduciary duty, which it breached by preventing them from receiving benefits to which they were entitled under the terms of the respective Plans, again in violation of ERISA § 502(a)(3). *See* FAC at 109, 129; *see also* Pl. Br. at 6–8.

Count 5, like Count 1, charges United with violating its fiduciary duty under ERISA to the three plaintiffs, *see* FAC at 111–14, 132–33; Pl. Br. at 6–7, this time by violating provisions of the Affordable Care Act and its corresponding regulations, which grant ERISA plan participants certain procedural rights during the appeal of a benefit denial. *See* 29 U.S.C. § 1185d; 75 Fed.Reg. 43330 (July 23, 2010).

### 3. Count 3 Fails to State a Claim Against United and Is Dismissed.

As discussed above, plaintiffs allege that United should be held responsible for denying them benefits under two separate theories: (1) they have a direct claim against United for denial of benefits to which they were entitled under ERISA § 502(a)(1)(B), or (2) United's decisions, which resulted in the denial of benefits, violated United's fiduciary duty to plaintiffs under ERISA § 502(a)(3).

Neither theory works. Plaintiffs are suing the wrong party.

ERISA provides a comprehensive enforcement scheme in § 502(a), the exclusive remedy for ERISA violations. *See* 29

---

**3.** As I read Count 3, the plaintiffs do not raise United's alleged failure to provide the appeal rights to which the plaintiffs were entitled under the terms of their Plans as one of the factual bases for their claim. *See* FAC ¶¶ 364–70. For example, Denbo states that United denied him the second-level appeal required by his Plan. *See id.* at 42–43. This factual allegation could have been the basis

for an ERISA § 502(a)(1)(B) claim "to enforce his rights under the terms of the plan," *see* 29 U.S.C. § 1132(a)(1)(B), since appeal rights are a term of his Plan. Instead, in Count 5, plaintiffs assert that such denials of appeal rights violated the Affordable Care Act and its corresponding regulations. *See* FAC ¶¶ 320–21. This theory is discussed below. *See infra* at § A.5.

U.S.C. § 1132(a); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52–54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). This section provides multiple avenues for relief for ERISA violations. Section 502(a)(1)(B) affords relief when benefits claims are denied in violation of ERISA plan terms. *See* 29 U.S.C. § 1132(a)(1)(B). Section 502(a)(3) "catchall" claims provide relief for ERISA violations not remedied elsewhere in § 502(a). *See id.* § 1132(a)(3); *Varity Corp. v. Howe*, 516 U.S. 489, 512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996).

Under ERISA § 502(a)(1)(B), "A civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). This section provides different remedial options for violations of plan terms. A participant or beneficiary may seek to "recover accrued benefits, to obtain a declaratory judgment that she is entitled to benefits under the provisions of the plan contract, and to enjoin the [defendant] from improperly refusing to pay benefits in the future." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146–47, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); *see also* 29 U.S.C. § 1132(a)(1)(B). Similarly, a plan participant whose rights under the terms of the plan have been violated can sue for injunctive relief compelling the plan to provide him the rights to which he is entitled under the terms of the plan. *See Cicio v. Does*, 321 F.3d 83, 95–96 (2d Cir. 2003), *vacated on other grounds*, 542 U.S. 933, 124 S.Ct. 2902, 159 L.Ed.2d 808 (2004). These are the types of relief that plaintiffs seek against United under Count 3.

The Second Circuit has held that only ERISA plans, ERISA plan trustees, and ERISA plan administrators may be sued under ERISA § 502(a)(1)(B). *See Chapman v. ChoiceCare Long Island Disability Plan*, 288 F.3d 506, 509 (2d Cir.2002); *Crocco v. Xerox Corp.*, 137 F.3d 105, 107–08 (2d Cir.1998); *Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir.1993). Two of my colleagues have held that entities not formally designated as "plan administrators" under 29 U.S.C. § 1002(16)(A), such as third-party claims administrators, may be sued under ERISA § 502(a)(1)(B), as long as they "actually controlled the distribution of funds and decided whether or not to grant benefits ..." *Am. Med. Ass'n v. United Healthcare Corp.*, No. 00 Civ. 2800(LMM)(GWG), 2002 WL 31413668, at *6 (S.D.N.Y. Oct. 23, 2002); *see also Sheehan v. Met. Life Ins. Co.*, No. 01 Civ. 9182(CSH), 2002 WL 1424592, at *2 (S.D.N.Y. June 28, 2002). However, the larger number of judges on this and other Second Circuit courts adhere to a bright-line rule that only entities that have been formally designated as "plan administrators" under 29 U.S.C. § 1002(16)(A) are proper "administrator" defendants in § 502(a)(1)(B) actions. *See Gates v. United Health Group Inc.*, No. 11 Civ. 3487(KBF), 2012 WL 2953050, at *10 (S.D.N.Y. July 16, 2012); *Hills v. Praxair, Inc.*, No. 11 Civ. 678S, 2012 WL 1935207, at *18–19 (W.D.N.Y. May 29, 2012); *Staten Island Chiropractic Assocs. v. Aetna, Inc.*, No. 09 Civ. 2276, 2012 WL 832252, at *11 (E.D.N.Y. Mar. 12, 2012); *Warren Pearl Const. Corp. v. Guardian Life Ins. Co. of America*, 639 F.Supp.2d 371, 380 (S.D.N.Y.2009); *Schnur v. CTC Comm'ns Corp.*, 621 F.Supp.2d 96, 109 (S.D.N.Y. 2008); *Stevenson v. Tyco Int'l (US) Inc. Supplemental Executive Retirement Plan*, No. 04 Civ. 4037(KMK), 2006 WL 2827635, at *4 (S.D.N.Y.2006). This Court falls into the latter group. *See Del Greco v. CVS*

*Corp.*, 354 F.Supp.2d 381, 384 (S.D.N.Y. 2005), *aff'd*, 164 Fed.Appx. 75 (2d Cir. 2006).

Denbo, Smith, and Olin have not alleged that United is the "plan administrator" of any of their Plans—nor could they, since their respective Plan Documents name the CBS Retirement Committee, the SYSCO Administrative Committee, and Oracle as the Plan Administrators. The plaintiffs assert that United acts as a "claims administrator," *see* FAC at 14–15; Pl. Br. at 1, 12, but § 502(a)(1)(B) claims do not lie against any and every "administrator" associated with a Plan. They lie only against the "plan administrator" designated pursuant to 29 U.S.C. § 1002(16)(A). United is thus not the proper defendant for the benefits claims asserted under § 502(a)(1)(B) in Count 3.

In Count 3, plaintiffs Denbo, Smith, and Olin also seek equitable remedies against United pursuant to § 502(a)(3), ERISA's "catchall" provision, under a breach of fiduciary duty theory. I will assume that United meets the definition of a "fiduciary" under ERISA. Nonetheless, this alternative theory of liability fails, because § 502(a)(1)(B) claims against the statutorily-designated defendants would provide adequate relief to plaintiffs.

Entities other than Plans, Plan trustees, and formally designated Plan Administrators may have obligations to ERISA plan participants and beneficiaries. As stated above, ERISA § 404(a)(1) requires a "fiduciary" to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA Subchapter I]." 29 U.S.C. § 1104(a). An entity qualifies as a "fiduciary" if it has "any discre-

tionary authority or discretionary responsibility in the administration of" an ERISA plan. *Id.* § 1002(21)(A)(iii). Fiduciaries must fulfill their duties under ERISA § 404(a)(1) to act in the interests of participants and to act in accordance with plan terms.

Under ERISA's "catchall" enforcement mechanism— § 502(a)(3)—plan participants may bring claims against fiduciaries for breaching their duties. *See Varity*, 516 U.S. at 512, 116 S.Ct. 1065; *Devlin v. Empire Blue Cross and Blue Shield*, 274 F.3d 76, 89 (2d Cir.2001). In such suits, participants may seek "to enjoin any act or practice which violates any provision of [ERISA Subchapter I] or the terms of the plan, or . . . to obtain other *appropriate* equitable relief" to redress such violations. 29 U.S.C. § 1132(a)(3) (emphasis added). Thus, for a fiduciary duty claim to lie under § 502(a)(3), a plaintiff must point to a specific violation of ERISA or plan terms committed by the fiduciary himself, and equitable relief must be appropriate under the circumstances.

Here, plaintiffs Denbo, Smith, and Olin allege that United is a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A)(iii), and they buttress this claim with factual contentions that United has discretionary authority and responsibility in the administration of their respective ERISA plans— allegations that I assume to be true for purposes of this motion. They also allege that they were entitled to receive particular benefits in accordance with the terms of their respective Plans. Therefore, an action for breach of fiduciary duty would seem to lie against United if it failed to act in accordance with plan terms, or in the interest of plan participants.

However, the matter is not so simple. In *Varity v. Howe*, 516 U.S. at 512, 116 S.Ct. 1065, the United States Supreme

Court characterized § 502(a)(3) as a "safety net" that offers "appropriate equitable relief for injuries caused by violations *that § 502 does not elsewhere adequately remedy*." (emphasis added). It cautioned: "Where Congress elsewhere provide[s] adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id.* at 515, 116 S.Ct. 1065.

■ *Varity* "did not eliminate the possibility of a plaintiff successfully asserting a claim under both § 502(a)(1)(B), to enforce the terms of a plan, and § 502(a)(3) for breach of fiduciary duty," *Devlin*, 274 F.3d at 89 (citing *Varity*, 516 U.S. at 515, 116 S.Ct. 1065), but the Court flatly stated that courts should not "normally" grant equitable relief for a breach of fiduciary duty if a plaintiff can obtain adequate relief under other sections of the statute. *See Varity*, 516 U.S. at 515, 116 S.Ct. 1065. Thus, breach of fiduciary duty claims brought under § 502(a)(3) will only survive a motion to dismiss if they seek relief that could not be obtained by bringing an action under some other subsection of § 502(a). *See Biomed Pharmaceuticals, Inc. v. Oxford Health Plans (N.Y.), Inc.*, 775 F.Supp.2d 730, 738 (S.D.N.Y.2011).

Where, as here, a plaintiff is seeking to redress the wrongful denial of benefits, courts have consistently rejected claims for equitable relief under § 502(a)(3) that would effectively order the provision of benefits, on the grounds that adequate monetary relief is available to plaintiffs under § 502(a)(1)(B). *See Frommert v. Conkright*, 433 F.3d 254, 256 (2d Cir.2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 102 (2d Cir.2005); *Staten Island*, 2012 WL 832252, at *10. For example, in *Frommert v. Conkright*, the plaintiffs claimed that their ERISA plan administrator had improperly calculated their bene-

fits. *See* 433 F.3d at 256. They sought a declaration that the method of calculation violated ERISA and an injunction against its future use. Despite the plaintiffs' characterization of their benefits claims as equitable in nature, the Second Circuit concluded that the "gravamen" of the action was a claim for the money they had been denied. The court stated that the relief the plaintiffs sought—recalculation of benefits—fell "comfortably" within the scope of § 502(a)(1)(B). *Id.* As a result, there was no need for additional equitable relief under § 502(a)(3). *See id.*

Similarly, in *Nechis v. Oxford Health Plans, Inc.*, the plaintiff sought equitable relief under § 502(a)(3) to reform allegedly illegal procedures for resolving benefits claims and appealing adverse decisions. *See* 421 F.3d at 102. The Second Circuit held that the plaintiff's harm could be adequately compensated by monetary damages under § 502(a)(1)(B) and dismissed the claim for equitable relief. *Id.* at 103.

■ In short, where the gravamen of a plaintiff's claim is the wrongful denial of benefits, that harm can be adequately remedied through monetary compensation under § 502(a)(1)(B), and courts should not grant additional equitable relief under § 502(a)(3)—such equitable relief would not qualify as "appropriate" equitable relief.

In determining whether relief available under § 502(a)(1)(B) renders § 502(a)(3) relief "inappropriate," courts take into account claims that can be brought against defendants other than the alleged fiduciary. *See Staten Island*, 2012 WL 832252, at *11; *cf. Gates*, 2012 WL 2953050, at n. 10. In *Staten Island Chiropractic Associates, PLLC v. Aetna, Inc.*, for example, the plaintiffs brought claims against an entity under §§ 502(a)(1)(B) and (a)(3) based on its alleged improper denial of benefits. 2012 WL 832252, at *3–11. Because the

court determined that the § 502(a)(1)(B) claims were not brought against proper defendants—plans, plan trustees, or formally designated plan administrators—it rejected those claims. *Id.* at \*4–6. The court then turned to the question of whether it could grant declaratory and injunctive relief under § 502(a)(3) against the named defendant to enforce plan terms and to clarify rights to future benefits. *Id.* at \*10. It stated: "The thrust of the complaint … is that the defendants have failed to follow proper procedures in denying the [plaintiffs'] claim[s] for benefits …" *Id.* The court concluded that adequate relief for such claims was "plainly available" under § 502(a)(1)(B). *Id.* at \*11. It went on to say: "The fact that the plaintiffs have currently brought their [§ 502(a)(1)(B)] claims against the *wrong defendant* does not alter the fact that relief was available to them under that section." *Id.* (emphasis added). The court stated that the plaintiffs could not "evade the requirements" of § 502(a)(1)(B)—including "the rules regarding proper defendants"—by recharacterizing such claims as breach of fiduciary duty claims against collateral fiduciaries under § 502(a)(3). The court dismissed the claims for equitable relief. *See id.*

■ The rule, then, is that claims for equitable relief under § 502(a)(3) must be dismissed if the plaintiff has adequate remedies under § 502(a)(1)(B)—even if those remedies lie against defendants other than the named defendant.

This case is very similar to *Staten Island.* Plaintiffs have in essence brought a denial of benefits claim. As was true in *Staten Island, Frommert,* and *Nechis,* the crux of plaintiffs' claim is for monetary relief—the benefits they were denied. Such a claim lies only against the self-insured Plans, any Plan trustees, and their respective 29 U.S.C. § 1002(16)(A) Plan Administrators—the CBS Retirement Committee, the SYSCO Administrative Committee, and Oracle.

In addition to monetary relief under ERISA § 502(a)(1)(B), plaintiffs request declaratory and injunctive relief requiring adherence to plan terms and to statutory mandates relating to the provision of benefits. But they can obtain such relief against the Plans and the Plan Administrators, who can be sued under § 502(a)(1)(B) for declaratory judgments that plaintiffs are entitled to benefits under plan terms, injunctions to prevent the improper denial of benefits in the future, and injunctions compelling the provision of other rights to which plaintiffs are entitled under the terms of their Plans. *See* 29 U.S.C. § 1132(a)(1)(B); *Russell,* 473 U.S. at 146–47, 105 S.Ct. 3085; *Cicio v. Does,* 321 F.3d at 95–96. There is no need to obtain direct equitable relief against United, because any injunction against the Plan or the Plan Administrator will necessarily bind United, which acts as the agent for the Plans in its alleged capacity as a claims administrator. *See* FED.R.CIV.P. 65(d)(2); *Regal Knitwear Co. v. N.L.R.B.,* 324 U.S. 9, 14, 65 S.Ct. 478, 89 L.Ed. 661 (1945). This renders an injunction against United as a fiduciary under § 502(a)(3) "inappropriate" equitable relief under existing precedent. *See Varity,* 516 U.S. at 515, 116 S.Ct. 1065.

Denbo, Smith, and Olin's claims in Count 3 must be dismissed. Because amendment cannot cure the defects inherent in these claims, they are dismissed with prejudice.

*4. Count 1 Is Dismissed.*

Count 1 alleges that United failed to provide both "quantitative [and] nonquantitative parity between coverage for mental health care and medical/surgical services" in its role as claims administrator for the plans. *See* FAC ¶¶ 356, 361. Plaintiffs

also assert that United subjected mental health benefits to more restrictive coverage and review policies than those used for medical benefits. *See id.* at 126–29. As a result, plaintiffs were denied benefits to which they claim they were entitled under the terms of their plans.

Plaintiffs allege that the practices that resulted in a denial of their benefits violated the Parity Act, 29 U.S.C. § 1185a. *See id.* at 126–27. They ask that United be required to reprocess their claims in accordance with law and request monetary relief (in the form of increased benefits), as well as declaratory and injunctive relief that will require United to act in accordance with the Parity Act. *See id.* at 127. Plaintiffs sue United in its capacity as a fiduciary under § 502(a)(3); they do not purport to bring this claim against United as an "administrator" under § 502(a)(1)(B), as was the case with Count 3. *See id.* at 97, 109; *see also* Pl. Br. at 5–8.

The provisions of the Parity Act at issue in this case are incorporated into ERISA Subchapter I. *See* 29 U.S.C. § 1185a. Consequently, these Parity Act provisions are enforceable solely through ERISA § 502(a), the exclusive civil remedy under ERISA. *See Davila,* 542 U.S. at 208, 124 S.Ct. 2488. There is no independent cause of action available to ERISA plan participants for violations of the Parity Act. *See* 29 U.S.C. § 1185a.

■■ The Parity Act was "designed to end discrimination in the provision of [insurance] coverage for mental health and substance use disorders as compared to medical and surgical conditions ..." *Coal. for Parity, Inc. v. Sebelius,* 709 F.Supp.2d 10, 13 (D.D.C.2010). Under the statute, ERISA plans that choose to offer mental health coverage must apply similar coverage policies for both *mental* health benefits and *physical* health benefits. *See id.;*

29 U.S.C. § 1185a. The "financial requirements" and "treatment limitations" applicable to mental health benefits must be "no more restrictive" than the "predominant" requirements or limitations applicable to medical and surgical benefits covered by the plan. *See id.* § 1185a(a)(3). The Parity Act defines "treatment limitations" as including "limits on the frequency of treatment, number of visits, days of coverage, or other similar limits on the scope or duration of treatment." *See id.* Additionally, the Parity Act regulations explain that the Act bars "nonquantitative" treatment limitations, which are limitations that are "not expressed numerically, but otherwise limit[ ] the scope or duration of benefits for treatment." 75 Fed.Reg. 5410–01 (Feb. 2, 2010). Essentially, ERISA plans must treat sicknesses of the mind in the same way that they would a broken bone.

■ Count 1 must be dismissed because, in its capacity as a claims administrator of self-insured ERISA plans, United is not a party to which the Parity Act applies.

According to its terms, the Parity Act applies to a *"group health plan* (or *health insurance coverage* offered in connection with such a plan) that provides both medical and surgical benefits and mental health or substance use disorder benefits ..." *See* 29 U.S.C. § 1185a (emphasis added). For ERISA purposes, a "group health plan" is defined as an "employee welfare benefit plan to the extent that the plan provides medical care ..." *Id.* § 1191d(a)(1). The CBS, SYSCO, and Oracle Plans are all "group health plans" within the meaning of the statute; plaintiffs do not contend that United qualifies as a group health plan under § 1185a.

Nor do plaintiffs contend that United "offer[s]" "health insurance coverage ...

in connection with" a group health plan under § 1185a in its capacity as a claims administrator for the CBS, SYSCO, and Oracle Plans. Indeed, plaintiffs could not reasonably make this argument. Though the Parity Act does not elaborate on what it means to "offer" insurance coverage "in connection with" a group health plan, the plain import of this language is that offering coverage in connection with a plan means selling insurance coverage to the plan or sponsoring employer to cover the costs of benefits paid out to beneficiaries. In fact, the Parity Act "Fact Sheet" published on the Department of Labor website states that the statute "applies to health insurance issuers who *sell coverage to employers* ..." *See* U.S. Department of Labor, "Fact Sheet, The Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA)", http://www.dol.gov/ebsa/newsroom/fsmhpaea.html (last visited Oct. 28, 2013) (emphasis added). Thus, the Department likewise interprets "offering" coverage to mean "sell[ing] coverage" to the employer-sponsored plans.

■■■ Because United does not sell coverage to the self-funded plans in this case, United does not "offer" coverage to the plans. United's only alleged connection to these plans is its role as their claims administrator; it processes claims and makes coverage determinations. An entity that is processing claims and making coverage determinations that will be paid with someone else's money is not an entity that is "offering" coverage "in connection with" that Plan or "sell[ing] coverage" for purposes of that Plan. Thus, the ERISA § 502(a)(3) breach of fiduciary duty claims raised in Count 1 based on alleged Parity Act violations must be dismissed.

Alternatively, plaintiffs' claims could be characterized as challenges to violations of the "terms of [their] plan[s]." *See* 29 U.S.C. § 1132(a)(1)(B). Since the Parity Act has been incorporated into ERISA, its requirements automatically become "terms" of every ERISA plan. *Cf. Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 750, 124 S.Ct. 2230, 159 L.Ed.2d 46 (2004) (stating that ERISA § 203(a) "adds a *mandatory term* to all retirement packages that a company might offer" by requiring that pension plans "provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age ..."). Any violation of these terms—by applying stricter standards to mental health benefits than to physical health benefits—would be remediable under ERISA § 502(a)(1)(B). However, any such claim would have to be brought against a proper § 502(a)(1)(B) defendant—the Plans, Plan trustees, or their designated § 1002(16)(A) Plan Administrators. United cannot be sued on such a claim.

Plaintiffs have pleaded facts that, if proven, demonstrate violations of the Parity Act. These violations can be redressed by suing their Plans or § 1002(16)(A) Plan Administrators under § 502(a)(1)(B). While United, as an agent of the Plans, may have committed the violations on behalf of the Plans, Congress has decreed that no action lies against it. Plaintiffs have recourse against United's principals; United would be bound by any judgment against them.

Count 1 has been brought against an improper defendant. The claims of plaintiffs Denbo, Smith, and Olin under this count are dismissed—with prejudice, since no amendment can cure the defect in the pleading.

### 5. Count 5 Is Dismissed.

Count 5, like Counts 1 and 3, must be dismissed because it has been brought against the wrong defendant.

The FAC alleges that United violated the ACA, and its corresponding ERISA regulations, by "adjudicating appeals of adverse benefit determinations relating to mental health care services contrary to the requirements under the Act and ERISA regulations ..." FAC ¶ 382. Specifically, plaintiffs allege that United violated these provisions by (1) failing to use independent reviewers in appeals, and (2) failing to provide continuing coverage pending the outcome of appeals. *See id.* ¶¶ 314–322. Plaintiffs also assert that United violated the ACA by failing to provide Denbo and Olin with two levels of appeals, as required by their plans. *See id.* ¶¶ 320–21. Plaintiffs argue that United breached its fiduciary duty to plaintiffs by violating the ACA, and they seek injunctive relief under ERISA § 502(a)(3). *See id.* ¶¶ 314, 384; Pl. Br. at 5–8.

The ACA and its corresponding regulations grant ERISA plan participants certain minimum procedural rights during an appeal of a benefits denial. *See* 29 U.S.C. § 1185d; 75 Fed.Reg. 43330–01 (July 23, 2010). Under the ACA regulations, appeals must be "adjudicated in a manner designed to ensure the independence and impartiality of the persons involved in making the decision." *Id.* at 43333. Plan participants are also entitled to "continued coverage pending the outcome of an internal appeal." *Id.* at 43334. These appeal rights are in addition to any that may be set forth in plan documents.

Like the Parity Act, the ACA does not provide for any independent private right of action to enforce its provisions. *See* 29 U.S.C. § 1185d. It is incorporated into ERISA and so is enforceable by ERISA plan participants only in accordance with the terms of ERISA § 502(a). *See Davila,* 542 U.S. at 208, 124 S.Ct. 2488.

The ACA requirements incorporated into ERISA "apply to *group health plans,*

and health insurance issuers providing *health insurance coverage* in connection with group health plans." *See* 29 U.S.C. § 1185d (emphasis added). Entities "providing health insurance coverage in connection with group health plans" are those which are selling coverage to the plans to cover the cost of benefits paid out to beneficiaries. *See supra* at § A.4.

As with the Parity Act claims in Count 1, Count 5 must be dismissed. Only "group health plans" or entities "providing health insurance coverage in connection with group health plans" are liable for violations of the ACA, *see* 29 U.S.C. § 1185d, and United is neither. It is a fiduciary, but under the ERISA enforcement scheme United (as an agent) can only be bound by an injunction against a principal that is liable under the ACA, such as the plaintiffs' Plans. The breach of fiduciary duty claim against United in Count 5 fails.

As discussed above, the ACA is incorporated into ERISA, *see* 29 U.S.C. § 1185d, and the fair import of this is that ACA appeal rights, like Parity Act requirements, become implicit terms incorporated into every ERISA plan. *See supra* at § A.4. Thus, for example, if a plan document provided for appeal rights that were not at least as favorable as the appeal rights granted by the ACA, that plan would be deemed amended to provide rights equivalent to the ACA standard. Obviously, if a plan provided more generous appeal rights, those would control.

Because ACA appeal rights are implicit terms of ERISA plans, plan participants may "enforce [their] rights under the terms of the plan" by suing an appropriate party or parties. *See* 29 U.S.C. § 1132(a)(1)(B). As with all § 502(a)(1)(B) claims, however, the only appropriate de-

fendants are Plans, Plan trustees, or § 1002(16)(A) Plan Administrators.

United, as a third-party claims administrator for the CBS, SYSCO, and Oracle Plans, is not a proper defendant on a § 502(a)(1)(B) claim based on violations of implicit plan terms.

Count 5 is therefore dismissed, with prejudice.

### B. Plaintiff Allender's Claims Under Counts 1 and 5 Are Dismissed.

Dr. Julie Ann Allender is a mental health care provider. *See* FAC ¶ 10. She alleges that she is "currently treating a United Insured patient whose benefits are sponsored by a large-group health plan." *Id.* Allender asserts that her patient wishes to remain anonymous; she does not explicitly identify his employer or the Plan pursuant to which he is insured. *See id.* It does, however, appear that some of the redacted exhibits submitted by Allender reveal the names of her patient's plan and employer—the "Alcatel–Lucent" Plan and the Alcatel Lucent Company. *See* Hufford Decl. Ex. 36 at 2; Allender Supp. Decl. Ex. B at 1. Allender also asserts that the plan is self-insured. *See* Allender Decl. ¶ 11. Allender does not provide plan documents that specify the Alcatel–Lucent Plan's terms.

█ Allender's patient has allegedly assigned his right to assert claims under ERISA to Allender. *See* FAC ¶ 243; Hufford Decl. Ex. 35. ERISA plan beneficiaries may properly assign ERISA claims to providers in exchange for health care. If they do so, the providers then have standing to enforce the beneficiaries' rights under ERISA. *See Montefiore Med. Ctr. v.*

*Teamsters Local 272,* 642 F.3d 321, 329 (2d Cir.2011). Thus, Allender may bring any claims under ERISA § 502(a) that her patient could properly bring as a "beneficiary." *See* 29 U.S.C. § 1132(a).

Though Allender does not explicitly identify United's role with respect to the Alcatel–Lucent Plan, her description of the functions performed by Defendant UBH suggests that it is a third-party claims administrator for the Plan—*i.e.,* that UBH processes claims and makes determinations regarding coverage and appeals. *See* FAC ¶¶ 226–43; Allender Decl. ¶¶ 11–30; Allender Supp. Decl. ¶¶ 2–30; Hufford Decl. Ex. 36 at 1.[4] Allender does not provide sufficient information for this Court to determine whether United is the Alcatel–Lucent Plan's designated 29 U.S.C. § 1002(16)(A) Plan Administrator, though I imagine that if United were the § 1002(16)(A) Plan Administrator, Allender would have stated as much. It appears that United stands in the same shoes as to Allender's patient as it does to Denbo, Smith, and Olin.

On behalf of her patient, Allender joins plaintiffs Denbo, Smith, and Olin in Counts 1 and 5, bringing breach of fiduciary duty claims under ERISA § 502(a)(3) for United's alleged violations of the Parity Act and the ACA. *See* FAC at 109, 126–27, 132–33, 244. Allender alleges violations of the Parity Act (Count 1) based on United's imposition of strict limitations on her patient's mental health benefits. *See id.* at 77–85. She states that United subjected her patient's claims to precertification and concurrent reviews (reviews of ongoing and future treatment) and used a "clear and compelling evidence" standard for determining the medical necessity of treat-

---

4. The plaintiffs' brief in opposition to the motion to dismiss also describes United as a "claims administrator" with respect to all plaintiffs' health insurance plans. *See* Pl. Br. at 1. The brief is not the pleading and does not amend the pleading. Neither is it evidence.

ment. *See id.* ¶¶ 226–29. Allender also asserts that United required her to provide a discharge plan for mental health treatment, which is contrary to generally accepted standards of medical care. *See id.* at ¶ 230. According to the FAC, these requirements were more onerous than the requirements imposed in connection with claims for medical and surgical benefits. *See id.* ¶¶ 241, 355–58.

Allender also alleges violations of the ACA (Count 5) based on United's failure to properly adjudicate her patient's appeals. *See id.* at 80–84, 111–14, 132–33. She states that United never responded to appeals of benefit denials that she submitted on August 6, 2012 and March 19, 2013. *See id.* at 80–83.

Allender's claims on behalf of her anonymous patient are subject to dismissal for the same reason that Denbo's, Smith's, and Olin's claims per Counts 1 and 5 were dismissed. *See supra* at §§ A.4 and A.5.

The Parity Act and the ACA requirements cited in Counts 1 and 5 do not apply to United in its role as a claims administrator for the self-insured Alcatel–Lucent Plan. The FAC does not plead that United is either the anonymous patient's "group health plan" or that United "offers" or "provides" coverage in connection with the Plan. *See* 29 U.S.C. §§ 1185a, 1185d. As explained above, *see supra* at §§ A.4 and A.5, only certain "group health plans" and "health insurance coverage offered in connection with such [plans]" are subject to the provisions of the Parity Act and the ACA that are incorporated into ERISA. *See* 29 U.S.C. § 1185a; *see also id.* § 1185d. It appears from the evidence submitted by Allender that her patient's "group health plan" is the Alcatel–Lucent Plan. *See* Hufford Decl. Ex. 36 at 2. And because the Plan is self-insured, *see* Allender Decl. ¶ 11, United does not sell coverage to the plan, and thus does not "offer" or "provide" coverage within the meaning of the Parity Act or the ACA. Allender thus fails to state a claim under Counts 1 and 5 on behalf of her patient.

Furthermore, Allender (on behalf of her patient) could not succeed in bringing Counts 1 and 5 under ERISA § 502(a)(1)(B) on the basis that United violated her patient's plan terms. Though Allender's Parity Act and ACA claims could properly be raised under § 502(a)(1)(B) as claims to redress plan term violations, *see supra* at §§ A.4 and A.5, United would not be a proper defendant to such claims since the evidence indicates that it is not a Plan, Plan trustee, or 29 U.S.C. § 1002(16)(A) Plan Administrator.

At this point, dismissal is without prejudice, but only due to the Court's ignorance about whether United is the § 1002(16)(A) Plan Administrator for Allender's patient's plan. If Allender wishes to file an amended complaint, she will have to identify her patient, her patient's employer, the relevant Plan, the name of the designated § 1002(16)(A) Plan Administrator, and the entire scope of United's role with respect to that Plan. She may file under seal in order to preserve her patient's anonymity, with the publicly filed counterpart redacting the patient's name and nothing else; the identity of the patient's employer and the Plan, however, must be publicly available. Obviously, if the Plan that forms the basis of Allender's claims is, like the CBS, SYSCO, and Oracle Plans, a self-insured plan for which United is not the § 1002(16)(A) Plan Administrator, amendment would be futile, and any effort to amend would violate Fed.R.Civ.P. 11.

Any proposed amendment of Allender's claims must be filed within ten days of the date of this decision. If no amendment is filed, the court will assume that Allender's patient's claim stands in the same position

as those of Denbo, Smith, and Olin, and will convert the dismissal to dismissal with prejudice.

### C. Plaintiff Menolascino's Claims Under Counts 1, 2, 4, and 5 Are Dismissed.

Dr. Shelly Menolascino is, like Dr. Allender, a mental health care provider. *See* FAC ¶ 245. She alleges that she treats many patients whose health plans involve benefits determinations made by United. *See id.* ¶¶ 13, 245–72. Like Allender, she takes assignments of claims from those patients; indeed Menolascino specifically pleads that she follows a standard practice of acquiring ERISA claim assignments from her patients. *See id.* ¶¶ 273–74. Assuming that Menolascino has valid assignments, she may bring any claims under ERISA § 502(a) that each of her assigning patients could properly bring as a beneficiary. *See Montefiore,* 642 F.3d at 329; 29 U.S.C. § 1132(a).

Menolascino asserts four ERISA claims against United, purportedly on behalf of certain of her patients. The FAC does not identify those patients, their employers, their employer-sponsored Plans, the designated Plan Administrators of those Plans, or United's precise role in each patient's plan. *See* FAC at 85–97. Like the other plaintiffs, Menolascino describes United's responsibilities as those of a third-party claims administrator—United "process[es] claims for mental health benefits" and makes coverage determinations. *See id.* ¶¶ 13, 249–75.

Menolascino joins the other plaintiffs in bringing Counts 1 and 5, the breach of fiduciary duty claims for alleged violations of the Parity Act and the ACA. *See id.* at 126–27, 132–33. Based on the allegations in the FAC, Menolascino's claims under those counts are dismissed as well, because United is not alleged to be a proper party defendant. *See supra* at §§ A.4, A.5, B. As was the case with Allender, the dismissal is at least temporarily without prejudice; any amended pleading is due ten days from the date of this opinion, and must disclose all of the information that the court would need to determine whether her patients' claims, like the claims of Denbo, Smith, and Olin, must be dismissed with prejudice: for each patient, the identity of the patient (under seal), the relevant employer, the Plan, the name of the designated Plan Administrator specified in the Plan, and the relationship United bears to the Plan. If United is merely a third-party claims administrator, amendment would plainly violate Rule 11.

Menolascino also pleads two other claims against United. Both must be dismissed.

In Count 2, she asserts ERISA denial of benefits and breach of fiduciary duty claims under § 502(a)(1)(B) and (a)(3). *See* FAC at 128–29. Menolascino alleges that United disputed the correctness of the billing codes Menolascino used when she submitted claims for counseling sessions with her patients, insisting that she should have billed under a different code or codes, for which lesser reimbursement was offered under the Plans. *See id.* at 86–96. After auditing 100 of Menolascino's bills, United determined that "overpayments" had been made to Menolascino. *See id.* ¶¶ 250–55. The FAC states that United unilaterally recouped those "overpayments" to Menolascino by subtracting money from payments made on later claims submitted on behalf of different patients—thereby denying the patients benefits to which they were allegedly entitled under the (undisclosed) terms of their respective Plans, in violation of ERISA. *See id.* at ¶¶ 256–59, 360–63.

■ In addition, Menolascino contends that United's application of certain billing codes for counseling sessions led to a disparate impact between coverage for mental health benefits and coverage for medical and surgical benefits, in violation of the Parity Act, 29 U.S.C. § 1185a. *See id.* at 128–29.

Menolascino's § 502(a)(1)(B) denial of benefits claim in Count 2, as well as her claim for equitable relief pursuant to § 502(a)(3), must be dismissed if United is neither the Plan, the 29 U.S.C. § 1002(16)(A) Plan Administrator, nor a trustee of her patients' Plans—the only appropriate defendants on a § 502(a)(1)(B) denial of benefits claim. Furthermore, because adequate equitable relief is available against statutorily-designated § 502(a)(1)(B) defendants that will bind United as their agent, no claim for equitable relief lies, either. *See supra* at § A.3. This is a determination that must be made on a case-by-case basis for each of Menolascino's patients. But such case-by-case analysis cannot be done, because Count 2 as presently pleaded omits all the information that would allow such a determination to be made. Count 2 as pleaded is thus dismissed under *Twombly/Iqbal,* because it fails to plead facts necessary to ascertain whether the complaint states a claim "on its face" on behalf of any of her patients. *Iqbal,* 129 S.Ct. at 1949; *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955.

If Menolascino believes that United is the Plan, Plan trustee, or § 1002(16)(A) Plan Administrator for any of her patients, she has ten days to file an amended complaint so alleging. Otherwise, ten days from the date of this opinion, dismissal will be with prejudice.

In Count 4, Menolascino brings a so-called "full and fair review" claim pursuant to ERISA §§ 502(a)(1)(B) and (a)(3). *See* FAC at 110, 130–31.

Plan participants' "full and fair review" procedural rights are set forth in ERISA § 503 and its corresponding regulations. *See* 29 U.S.C. § 1133; 29 C.F.R § 2560.503–1. Section 503 requires an "employee benefit plan" to "provide adequate notice in writing" about the specific reason(s) why a particular claim for benefits was denied, as well as to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a *full and fair review* by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133 (emphasis added). According to the FAC, United's refusals to fully reimburse Menolascino's patients' claims for their counseling sessions, and its recoupments of "overpayments" allegedly made in connection with earlier allowed claims, constituted ERISA benefit denials, thereby triggering her patients' § 503 procedural rights. *See* FAC ¶ 313. Menolascino alleges that her patients were not "provid[ed] ERISA-compliant full and fair reviews" for these benefit denials. *See id.* In keeping with her overbroad approach to pleading, she does not specifically assert what each individual Plan's appeal procedures were—they may well have been different, some may have been one-level appeals while others provided for two-level appeals—nor does she identify, for each patient and each Plan, who was designated to hear appeals.

■ Count 4 fails as against United, and so must be dismissed, because ERISA § 503 imposes obligations only upon the "employee benefits plan[s]" themselves. *See* 29 U.S.C. § 1133; *see also Gates,* 2012 WL 2953050, at *10; *Am. Med. Ass'n,* 2002 WL 31413668, at *9–10. Menolascino does not allege that United is the "plan" for any of her patients—and it is inconceivable that she could so allege—so she fails to properly plead a violation of § 503.

Menolascino argues that she is not bringing ERISA § 503 claims, but instead bringing claims to enforce her patients' full and fair review rights under § 502(a)(1)(B) and (a)(3). *See* Pl. Br. at 38. But couching such claims in the language of § 502(a)(1)(B) and (a)(3) does not allow Menolascino to avoid the indisputable fact that the full and fair review requirements are imposed by § 503, not by § 502(a)(1)(B) or (a)(3), and in any event, for the reasons discussed exhaustively above, no claim lies against United under these sections. *See supra* at § A.3. Count 4 is dismissed, temporarily without prejudice, as discussed above.

 I should note that this Court rejects the argument advanced by Defendants that Menolascino's claims in Counts 1, 2, 4, and 5 are anything other than properly assigned ERISA benefits claims brought on behalf of her patients. *See* Def. Br. at 36–39. A plaintiff states a colorable claim under ERISA "where the claim implicates coverage and benefit determinations as set forth *by the terms of the ERISA benefit plan ...*" *Montefiore*, 642 F.3d at 325 (emphasis added); *see also Korman v. Consol. Edison Co. of New York, Inc.*, 915 F.Supp.2d 359, 366–67 (E.D.N.Y.2013). Menolascino disputes the existence and extent of benefit coverage under the terms of her patients' ERISA plans, and she alleges violations of her patients' procedural rights under ERISA. Such claims fall within the scope of the civil enforcement mechanisms of ERISA § 502(a), and so are cognizable—provided, of course, they are asserted against a proper party defendant.

D. **This Court Lacks Subject Matter Jurisdiction over the Claims Brought by Plaintiff Kamins.**

There is one more individual plaintiff—Michael Kamins. He stands in a different position than the other individual defendants, because his health insurance plan is not subject to ERISA. Kamins pleads that he is a New York state employee through the State University of New York, Stony Brook. *See* FAC ¶ 15. He receives health insurance for himself and his family through the Empire Plan, a government-sponsored employee benefits plan. *See id.* Such plans are statutorily exempt from ERISA, *see* 29 U.S.C. § 1003(b)(1), and are governed by, in this case, New York law. *See* FAC ¶¶ 15–16, 385–94; Ewing Decl. Ex. A. Kamins alleges that United, through Defendant UHIC–NY, "insures and administers the Empire Plan." *See* FAC ¶ 36. He also asserts that UBH performs claims administration for the Plan. *See id.* ¶ 37.

Kamins's son "John," [5] who is an Empire Plan beneficiary, has suffered from severe mental illness since 2011. *See id.* at 16–17. John has required treatments such as medication, frequent psychotherapy, and occasional hospitalization. *See id.* at 16–29. Kamins holds a durable power of attorney for his son and sues as John's attorney-in-fact. *See id.* ¶ 16. He brings three New York state law claims on John's behalf.

The Empire Plan covers "medically necessary" mental health treatment. *See id.* Kamins asserts that United applied discriminatory policies—specifically, preauthorization, concurrent reviews, disparate fee schedules, coverage exclusions, and a restrictive definition of "medical necessity"—when reviewing and allowing or disallowing claims for coverage of John's mental health treatment. *See id.* at 114–16, 133–34. As a result, the mental health benefits available under the Empire Plan

---

5. "John" is not his real name.

are allegedly inferior to the benefits offered for medical and surgical treatment. *See id.* Kamins claims that this lack of parity in coverage violates the New York Parity Act (N.Y. Ins. Law § 3221(1)(5)) ("NYPA"). (Count 6) *See id.* at 133–34.

Kamins also claims that United deceived its customers in violation of the New York Deceptive Trade Practices Act, N.Y. G.B.L. § 349 by failing to disclose its actual discriminatory policies. (Count 7) *See id.* at 134–35.

Finally, he brings a claim under the New York Prompt Pay Statute (N.Y. Ins. Law § 3224–a), alleging that United failed to pay benefit claims submitted on John's behalf within 45 days of receipt, as required by that statute. (Count 8) *See id.* at 135–36.

Though Kamins originally joined the other plaintiffs in asserting ERISA claims under Counts 1 and 5, and brought two additional claims under California law (Counts 9 and 10), he has (wisely) elected not to pursue these claims. *See id.* at 126–27, 132–33, 136–38; Pl. Br. at 21. Accordingly, they are deemed withdrawn, with prejudice. Only claims arising under New York law remain—Counts 6, 7, and 8. Because Kamins has abandoned his federal claims, this Court lacks federal question jurisdiction over Kamins's claims under 28 U.S.C. § 1331.

■ Kamins cannot rely on diversity jurisdiction to pursue his state law claims here. A party seeking to invoke this Court's diversity jurisdiction under 28 U.S.C. § 1332 has the burden of proving that (1) complete diversity of citizenship exists between the parties, and (2) the amount in controversy exceeds $75,000. *See McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). Complete diversity of citizenship exists where every plaintiff is a citizen of a different state

than every defendant. *See Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).

■ Kamins has failed to allege both prongs of diversity jurisdiction. A corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). A natural person is a citizen of the state in which he is domiciled. *See Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 828, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989). According to the FAC, Kamins and John reside in California, and Defendant UBH is incorporated and headquartered in California. *See* FAC ¶¶ 15, 37.

Kamins has also not pled that his claims meets the amount in controversy requirement of § 1332. The FAC does not specify the amounts in controversy for Counts 6, 7, and 8. *See id.* at 133–36.

So Kamins asserts that his state law claims should be entertained under 28 U.S.C. § 1367.

In a case where a federal district court has original jurisdiction over federal question claims, § 1367(a) confers supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United State Constitution." 28 U.S.C. § 1367(a).

Kamins's three remaining claims arise under state statutes that are not identical to the ERISA provisions at issue and so are "related" only in the sense that both sets of statutes concern the same subject matter. His state law claims are not "so related" to the other individual plaintiffs' federal claims as to "form part of the same case or controversy" as the ERISA claims. *See* 28 U.S.C. § 1367(a). The purported common thread is that all claims are asserted against United and arise out of

decisions made by United. But as discussed above, the federal claims cannot be brought against United. Whether the state law claims can be asserted against United is purely a matter of state law. Thus, Kamins's claims do not fall within § 1367.

Even if Kamins's claims did form part of the same case or controversy as the other claims, I would decline to exercise jurisdiction over his .non-federal question claims under § 1367(c)(3), which permits this Court to take such action if it has "dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). No federal question claims remain to which Kamins's state law claims could be deemed supplemental; the ERISA claims in Counts 1–5 have been dismissed as to all other plaintiffs.[6] It would be inappropriate for me to exercise supplemental jurisdiction over the claims arising under state law. It is early in the case; there has been no discovery or other merits-related activity. Furthermore, on issues of state law—particularly the NYPA (N.Y. Ins. Law § 3221(1)(5)), which passed in 2006, has never been interpreted by any New York court, and has never been addressed by New York's highest court—I defer to my state court colleagues in their area of expertise and decline to exercise jurisdiction over Kamins's state law claims.

Counts 6, 7, and 8 are hereby dismissed, without prejudice to their being asserted in the New York State Supreme Court or in a California state court.

E. The New York State Psychiatric Association's Claims Are Dismissed Because the Association Lacks Standing to Bring the Claims of Its Members.

■ The New York State Psychiatric Association ("NYSPA") joins with the oth-

er plaintiffs in bringing eight of the causes of action in the FAC: Counts 1–8. *See* FAC at 72–77. On behalf of its psychiatrist members and their patients, the association objects to the practices and procedures used by United in processing claims. *See id.* The NYSPA lacks standing to sue, however, because it has not shown either that (1) its members personally have standing to bring ERISA claims, or (2) proving the eight claims will not require the participation of individual association members.

The NYSPA is a professional association of psychiatrists practicing in New York. *See id.* ¶ 7. Menolascino is a member of the NYSPA. *See id.* ¶ 11. The FAC states that many of the NYSPA's members "provide mental health services to United Insured patients, and are thereby subjected to United's policies and procedures regarding mental health coverage· determinations." *Id.* ¶ 7. It asserts that United's "improper and overly restrictive policies applied· to deny or reduce coverage for mental health care, in violation of federal and state parity and related laws." *Id.* ¶ 208. The NYSPA challenges United's medical necessity definitions and preauthorization requirements under the various plans, among other things. *See id.* at 72–77.

The NYSPA joins other plaintiffs in bringing Counts 1–8 on behalf of its psychiatrist association members and their patients. *See id.* at 126–36. As discussed above, Counts 1–5 arise under ERISA. Count 6, 7, and 8 arise under New York state law, claiming violations of the NYPA (N.Y. Ins. Law § 3221(1)(5)), the Deceptive Trade Practices Act (N.Y.G.B.L. § 349), and the Prompt Pay Statute (N.Y.

---

**6.** As discussed below, *see infra* § E, the New York State Psychiatric Association lacks

standing to pursue its ERISA claims, and they are dismissed.

Ins. Law § 3224–a). The NYSPA requests declaratory and injunctive relief for these eight claims. *See id.* at 126–36.

Even if the NYSPA had associational standing to pursue these claims, they would have to be dismissed for the reasons discussed above. But the NYSPA lacks associational standing.

■■■ An association has derivative standing "to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Rent Stabilization Ass'n of City of New York v. Dinkins,* 5 F.3d 591, 596 (2d Cir.1993) (quoting *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)).

### 1. The NYSPA Members Do Not Have Standing to Sue in Their Own Right Under ERISA.

■■■ The NYSPA lacks associational standing for a variety of reasons. First, it has not pleaded facts sufficient to demonstrate that its members would otherwise have standing to sue under ERISA in their own right. To satisfy this first element of standing, an association must show that its members have a personal stake in the outcome of the proceeding. *See Goode v. City of Philadelphia,* 539 F.3d 311, 325 (3d Cir.2008). The association cannot derive standing from its members unless the members have standing themselves. Because the NYSPA brings claims to enforce the ERISA rights of its members' *patients,* it fails to allege that the members have an adequate personal stake in those claims.

In *MainStreet Organization of Realtors v. Calumet City, Ill.,* an association of realtors challenged an ordinance that made it more difficult for the realtors' clients to sell their homes. *See* 505 F.3d 742, 743–44 (7th Cir.2007). The association claimed that the ordinance violated the clients' due process rights. *See id.* at 744. In analyzing the association's standing, the Seventh Circuit first set forth the general rule that one may not bring suit to enforce another's rights. *See id.* at 746. Though the court acknowledged exceptions to this rule, it concluded that no exception was warranted in that case. *See id.* at 746–47. It stated: "As there is no hindrance to the *primary victims'* enforcing their rights, there is no reason to allow the [realtors] into the litigation arena." *Id.* at 747 (emphasis added). For this reason, the Seventh Circuit held that, although the realtors may indirectly suffer injuries from their clients' inability to sell their homes, the realtors nonetheless lacked standing to raise their clients' due process rights. *See id.* at 744–47. Because the association's standing would have been derived from its realtor members' standing, the association lacked standing as well. *See id.* at 744.

■■■ Here, the primary victims of United's alleged ERISA violations are the mental health patients, not the psychiatrist members of the NYSPA. In fact, none of the members has a personal right to sue under ERISA § 502(a), since only parties enumerated in ERISA—plan participants, beneficiaries, and fiduciaries—may raise such claims. *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 27, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). As in *MainStreet,* the association members at most suffer indirect harms, and there is no hindrance to the primary victims' ability to bring suit themselves. On the contrary, the FAC raises claims by several patients to enforce

their own rights under ERISA. Thus, the general rule controls this case: the association members may not sue to enforce another's rights. *See MainStreet*, 505 F.3d at 746–47. No exception is warranted here. Because the association members have no personal standing to sue on behalf of their patients under ERISA, the NYSPA lacks derivative standing as well. *See id.* at 744.

An individual member of the NYSPA could acquire standing to pursue an ERISA claim by obtaining a valid assignment from a patient. *See Montefiore*, 642 F.3d at 329. Even then, however, the member would lack the standing "to sue in [her] own right" that is required for an association to derive standing from its members. *See Hunt*, 432 U.S. at 343, 97 S.Ct. 2434. As an assignee, the member would merely be standing in the shoes of her patient to represent the patient's interests. Because association members with assignments would not have standing to sue in their own right, the association would not gain derivative standing under those circumstances.

### 2. The NYSPA's Claims Require the Participation of Individual Members.

Second, and perhaps more important, the NYSPA lacks associational standing for all its federal and state claims because it is clear that the claims asserted and the relief requested will require the participation of its individual members. To satisfy this element of associational standing, a plaintiff's claims and relief cannot require "individualized proof" and must be able to be "resolved in a group context." *Hunt*, 432 U.S. at 344, 97 S.Ct. 2434. Here, the NYSPA's "many psychiatrists" challenge United's practices with regards to an unknown number of patients under an unknown number of plans. *See FAC* ¶ 208. The plaintiffs argue that they can

prove these claims with limited or no participation from association members. *See* Pl. Br. at 41–45. This is plainly not the case.

Proof of the association's claims cannot be offered "in a group context," *Hunt*, 432 U.S. at 344, 97 S.Ct. 2434, but instead requires the participation of the individual psychiatrist members. First, even if NYSPA members pursued ERISA claims on the basis of assignments from their patients, the members would need to establish each patient's valid assignment in order to have standing. *See Am. Med. Ass'n v. United HealthCare Corp.*, No. 00 Civ. 2800(LMM), 2007 WL 1771498, at *21 (S.D.N.Y. June 18, 2007). Thus, merely proving standing would require the participation of individual psychiatrists. *See id.* In addition, the members would need to prove that each patient exhausted his administrative remedies, since exhaustion is a pre-requisite to suits under ERISA. *See id.* (citing *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 219 (2d Cir.2006)). This "detailed and fact-specific inquiry" would require extensive association member participation. *See id.*

Second, proving the merits of the Parity Act (29 U.S.C. § 1185a) and NYPA (N.Y. Ins. Law § 3221(1)(5)) challenges will require NYSPA member participation. Like the Parity Act, the NYPA requires parity in insurance coverage of mental health care as compared to medical care. *See* N.Y. Ins. Law § 3221(1)(5). Proving violations of these two parity laws will necessitate a comparison of the standards governing mental health benefits with those governing medical and surgical benefits under each patient plan. The NYSPA will need its members to establish the relevant terms of the thousands of potentially affected benefit plans and patients, and how those plans are operated in practice. The medical necessity definitions the NYSPA

challenges, for example, would need to be established based on circumstances and language unique to each plan. The NYS-PA also challenges the preauthorization requirements used by the different plans, see FAC ¶¶ 356, 368, but each plan likely has its own distinct preauthorization process. Further, for certain plans mentioned in the FAC, United is alleged to process only the mental health benefit claims, whereas a separate entity processes the medical benefits. See id. ¶ 21. This is likely the case for some of the members' patients' plans as well. Proving that there is a lack of parity in coverage in the various plans will require evidence from association members of the practices used by each entity involved in administration of each plan. This is exactly the sort of individualized proof that precludes an association from raising claims on behalf of its members.

Third, proving that United violated ERISA and the ACA by failing to provide proper appeals would necessitate the participation of association members. The FAC spends several pages detailing Menolascino's appeals of claim denials and explaining how United did not provide proper procedural rights. See id. at 85–96, 130–32. Similar individualized proof would be required to demonstrate that the patients of NYSPA members were each denied full and fair reviews under their plans.

Fourth, the NYSPA's claims under the New York Prompt Pay Statute, N.Y. Ins. Law § 3224–a, will likewise require individualized proof. Under the statute, insurers must pay benefits to policyholders or to health care providers within 45 days of receiving a benefits claim. See N.Y. Ins. Law § 3224–a. To show a violation of this law, association members would need to detail each effort to submit a claim for a patient's treatment and United's corresponding failure to pay in a timely manner.

Fifth, the claims under the New York Deceptive Trade Practices Act, N.Y. G.B.L. § 349, cannot be proven in a group context. This statute bars "[d]eceptive acts or practices in the conduct of any business, trade or commerce." The NYS-PA asserts that United deceived consumers by engaging in practices that violated the terms of plan documents. See FAC at 116–19. Because United's actual practices were contrary to those represented to consumers in plan documents, the NYSPA argues, United engaged in deceptive practices within the meaning of § 349. See id.; Pl. Br. at 29–30. Demonstrating United's actual practices will require individualized proof of how it operates with respect to particular patients' coverage and appeals.

Finally, the relief requested by the NYSPA will require association member participation. The NYSPA seeks declaratory and injunctive relief to change how United processes mental health benefits claims in the future. Crafting such relief will require an examination of the facts relating to the multitude of plans and patients in this case.

Because the NYSPA needs individualized proof from association members to prove its claims and to obtain relief, associational standing is precluded in this case.

To the extent plaintiffs move for leave to amend the FAC, they cannot overcome the NYSPA's lack of standing. The motion for leave to amend is denied and dismissal of the NYSPA's claims is with prejudice.

F. The Motion for a Preliminary Injunction Is Denied.

Because all claims are dismissed, the motion for a preliminary injunction is denied as moot.

## CONCLUSION

The clerk of the court is directed to dismiss all claims and to remove all pending motions from the Court's list of open motions. If no amended pleadings are filed within 10 business days, I will direct the clerk to enter judgment dismissing the complaint and to close the file.